Johnny E. BOYD, Appellant,

v.

Louis W. SULLIVAN, Secretary of Health & Human Services, Appellee.

No. 91–1753.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1991.

Decided March 30, 1992.

Timothy C. Harlan, Columbia, Mo., argued, for appellant.

Wesley Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., argued (Joseph Moore, Asst. U.S. Atty., on brief), for appellee.

Before LAY,[*] Chief Judge, WOLLMAN and HANSEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Johnny E. Boyd appeals from the district court's order denying him Supplemental Security Income benefits. We reverse and remand to the Secretary for further findings.

## I.

Boyd worked full-time as a truck driver and part-time as a cattle farmer until the summer of 1987. On October 9, 1987, he was involved in a motor vehicle accident, after which he began to suffer periods of confusion, severe bouts of vomiting and diarrhea, shortness of breath, and extreme fluid retention. In 1988, Boyd was hospitalized with seizures resulting from a critical electrolyte imbalance caused by his persistent vomiting and diarrhea. He had episodes of sleepwalking. In one, he fell and broke four bones in his foot; in another, he went outside wearing only his underclothes. He gained between fifty-five and sixty pounds, much of which was attributable to retained fluid. Boyd's physicians have been unable to discover the cause of or suggest a treatment for most of Boyd's problems. He attempted to drive a truck again in February of 1988. He got so ill halfway through the trip, however, that he was unable to drive the truck back to Missouri.

Boyd has a history of high blood pressure, peptic ulcer disease, depression, anxiety, insomnia, and alcohol abuse. The high blood pressure and the peptic ulcer disease are controlled with medication. Boyd has never been treated for depression or anxiety, at least in part because he reacts paradoxically to standard medications. He was diagnosed with sleep apnea syndrome [1] two weeks prior to the benefits hearing and underwent surgery to attempt to correct it two months after the hearing.[2] Boyd's wife testified at the hearing that Boyd did not drink while he was on the road, but that he would drink "heavily" when he was home. Boyd testified that he had quit drinking. According to Boyd's medical records, his physicians felt that many of his problems were precipitated by his alcohol abuse. Several advised him to stop drinking. In addition, Boyd told the ALJ that he suffers from severe pain in his lower back and his joints. Boyd rated his pain at eight on a one-to-ten scale, and his medical records show that he takes four Tylenol #3[3] for his pain or in order to sleep.

In the summer of 1988, Boyd filed a claim for Supplemental Security Income (SSI), claiming that he was disabled from the effects of the accident.[4] Boyd's claim

---

[*] The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

[1] People with sleep apnea syndrome typically breathe normally during waking hours, but have periods when respiration is reduced or ceases completely during sleep. This abnormal ventilation alters the levels of oxygen and carbon dioxide in the blood and affects cardiac rhythm. It also causes the affected person to become progressively sleep-deprived, producing extreme somnolence, irritability, intellectual deterioration, personality changes, impotence, and confusion. There is a high incidence of the syndrome among men with high blood pressure. David P. White, *Sleep Apnea Syndrome, in* 2 Textbook of Internal Medicine 1967–72 (William N. Kelley, M.D., ed., 1989); *see also The*

*Merck Manual of Diagnosis & Therapy* 1379–80 (Robert Berkow, M.D., ed., 15th ed. 1987).

[2] The operation, which was performed at Barnes Hospital in St. Louis on June 26, 1989, was described in the surgeon's report as a "Tracheostomy, Uvulopalatoplasty and Base of Tongue Resection."

[3] Tylenol #3 is a prescription medication containing acetaminophen and codeine. One tablet is the usual adult dosage. Physicians' Desk Reference, 1381–82 (1992).

[4] Boyd also applied for disability benefits, but the Social Security Administration determined that Boyd was not insured for disability benefits after September 30, 1987. Boyd appealed this decision to the district court, which upheld the

was denied, and he asked for a hearing before an administrative law judge (ALJ). Boyd was unrepresented by counsel at this hearing. The ALJ found that a significant number of jobs existed in the national economy that Boyd could perform. In making this finding, the ALJ relied on the testimony of a vocational expert. At the benefits hearing, the ALJ asked the vocational expert whether, accepting as true everything that Boyd and his wife had said, there were jobs in the national economy which Boyd could perform. The vocational expert stated that there were none. The ALJ then asked the expert to assume that Boyd had mild pain, could lift twenty pounds, perform sedentary, light, or medium work, had normal obesity and shortness of breath, could not work around dangerous or moving machinery, and had to be close to a restroom. Based on these assumptions, the vocational expert stated that there were more than one million jobs in the national economy that Boyd could perform.

The Social Security Administration Appeals Council declined to review the ALJ's decision. Boyd then brought an action in the district court, claiming that the ALJ's decision was not supported by substantial evidence on the record as a whole. The district court referred the matter to a magistrate, who recommended that the Secretary's decision be upheld. The district court adopted the magistrate's recommendation. The court denied Boyd's motion for summary judgment and granted the Secretary's motion for summary judgment, concluding that the ALJ's decision was supported by substantial evidence on the record as a whole. Boyd now appeals to this court, claiming that the district court erred in this conclusion.

## II.

Supplemental Security Income is a cash assistance program which provides benefits to persons who are aged, blind, or suffer from a physical or mental disability. 42 U.S.C. § 1382(a). A person is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment." *Id.*, § 1382c(a)(3)(A). An individual is under a disability only if the impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." *Id.*, § 1382c(a)(3)(B).

To carry out his duty to implement these statutes, the Secretary has established a five-step process for determining whether a person is disabled. *See* 20 C.F.R. § 416.-920. First, the Secretary determines whether a claimant for disability benefits is engaged in "substantial gainful activity." *Id.*, § 416.920(b). Second, the Secretary determines whether the claimant has a severe impairment, that is, "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*, § 416.920(c). Third, the Secretary determines whether the claimant has an impairment which meets or. equals one of the impairments listed in the regulations. *Id.*, § 416.920(d) and Part 404, Subpart P, Appendix 1. Fourth, the Secretary considers the claimant's residual functional capacity and the physical and mental demands of the claimant's past work, and determines whether the claimant can still perform that work. *Id.*, § 416.920(e). Last, the Secretary determines whether any substantial gainful activity exists in the national economy which the claimant can perform. *Id.*, § 416.905(a), § 416.920(f).

There is no dispute that Boyd is no longer engaged in any substantial gainful activity, that he has a severe impairment which does not meet one of the listed impairments, and that, because of his impairments, Boyd cannot return to his past work as a truck driver or cattle farmer. Thus, the burden of proof was on the Secretary to show that other jobs existed in the national economy which Boyd could perform. *See Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir.1986) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1146–47 (8th Cir.1982)). In making this showing, the Secretary may

decision of the Secretary. He does not appeal that issue to this court.

rely on the testimony of a vocational expert. *Id.*

We will uphold the Secretary's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Whitehouse v. Sullivan,* 949 F.2d 1005 (8th Cir.1991). "Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion," *Whitehouse,* 949 F.2d at 1006 (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), and "[w]e may not reverse 'merely because substantial evidence would have supported an opposite decision.'" *Id.* (quoting *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)).

■ While a claimant for benefits has the burden of proving a disability, the Secretary has the "duty to develop the record fully and fairly, even if ... the claimant is represented by counsel." *Warner v. Heckler,* 722 F.2d 428, 431 (8th Cir.1983). When a claimant's medical records do not supply enough information to make an informed decision, the ALJ may fulfill this duty by ordering a consultative examination. 20 C.F.R. § 416.917. Moreover, "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Dozier v. Heckler,* 754 F.2d 274, 276 (8th Cir.1985) (quoting *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir.1984)).

■ We believe that the ALJ did not develop this record fully. First, Boyd had major surgery for sleep apnea syndrome shortly after the benefits hearing. The ALJ did not obtain and consider the records of follow-up care which would reveal whether the surgery was successful in relieving Boyd's symptoms. Second, the ALJ did not obtain the results of a Magnetic Resonance Imaging (MRI) test which Boyd had undergone shortly before the hearing. Boyd and his wife testified at the hearing that the doctor had told them that the MRI revealed a "major blockage," but neither was able to give the ALJ more information. The record does not even reveal what portion of Boyd's body was tested. Third, the ALJ did not explore Boyd's alcohol abuse

at the time of the hearing, nor did he order a consultative examination to determine the severity of Boyd's emotional and mental problems. Last, the ALJ did not take into account any of the emotional and mental problems which were suggested by the record. Given the conflict between the evidence in the medical records (some of which reflect confusion and mental disturbances, while others reflect normal mental status) and Boyd's normal demeanor at the hearing, we believe the ALJ could not have made an informed decision about whether Boyd had mental or emotional problems without a consultative examination.

We also believe that because the record was not properly developed, the second question posed to the vocational expert was flawed. The expert was asked to assume Boyd's condition, but that assumption did not include sleep apnea or any mental, emotional, or alcohol problems. Had the ALJ properly taken these conditions into account, and the question posed to the expert reflected the ALJ's consideration of the whole record, the expert's answer may well have been different.

Accordingly, we reverse the judgment and remand the case to the district court with directions to remand to the Secretary for further findings consistent with this opinion.