# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3054

_____

| | | |
|---|---|---|
| Robin Gasaway, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Kenneth S. Apfel, | * | District of Arkansas. |
| Commissioner, Social Security | * | |
| Administration, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  February 12, 1999

Filed:  August 16, 1999

_____

Before WOLLMAN, Chief Judge, and LOKEN and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Robin Gasaway applied for federal disability benefits in late 1995.  The Social Security Administration (SSA) denied her application on initial consideration and on reconsideration.  Ms. Gasaway then requested a hearing before an administrative law judge (ALJ) of the SSA.

After the hearing (at which Ms. Gasaway was not represented by a lawyer), the ALJ denied Ms. Gasaway's petition for disability benefits, finding that she had the residual functional capacity to perform "a full range of medium duty work," including work as a housekeeper/maid. Ms. Gasaway then requested review of the ALJ's decision by the SSA Appeals Council and submitted additional medical records and a letter brief objecting to the ALJ's findings. The SSA Appeals Council denied review.

Ms. Gasaway filed for judicial relief. On the parties' cross-motions for summary judgment, the court below affirmed the decision of the SSA. Ms. Gasaway appeals. We vacate the judgment of the court below and remand the case for further proceedings.

I.

The ALJ found that Ms. Gasaway failed to present evidence of an impairment or combination of impairments so severe that she would automatically be entitled to disability benefits, *see* 20 C.F.R. § 404.1520(d), § 404.1520a(c)(2), and 20 C.F.R. Part 404, Subpart P, Appendix 1. (The ALJ therefore went on to evaluate Ms. Gasaway's residual functional capacity.) In her motion for summary judgment in the court below, Ms. Gasaway contended that she does indeed have such a combination of impairments, namely, mental retardation in conjunction with certain physical conditions that somewhat limit her ability to work. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00 (mental disorders), § 12.05 (mental retardation). Specifically, she argued that she meets the criteria included in § 12.05C of the pertinent SSA regulations.

To meet the criteria included in § 12.05C, a claimant must have a "valid verbal, performance or full scale IQ of 60 through 70 [as measured by a particular psychological test] and a physical or other mental impairment imposing additional and significant work-related limitation of function" (emphasis supplied). With respect to the first part of the requirements under § 12.05C, Ms. Gasaway pointed to her verbal IQ score of 69 on the relevant psychological test. With respect to the second part of

the requirements under § 12.05C, Ms. Gasaway pointed to the ALJ's finding that she has "severe impairments" from various physical conditions, evidently including back pain, carpal tunnel syndrome, high blood pressure, tachycardia (accelerated heart rate), and gastritis (inflammation of the stomach. In response (and in its own motion for summary judgment), the SSA asserted, among other things, that during the administrative proceedings, Ms. Gasaway never offered mental retardation as a basis for disability benefits.

In its opinion granting summary judgment to the SSA, the court below stated that Ms. Gasaway never alleged either "depression" or "psychiatric impairment" in her application for benefits, during the hearing with the ALJ, or in the additional medical records and argument that she submitted to the SSA Appeals Council. Under those circumstances, the court held, the ALJ had no obligation to investigate whether Ms. Gasaway might have automatically qualified for disability benefits by virtue of a "disabling mental impairment." From the context of the court's discussion, it is clear that the "disabling mental impairment" to which the court alluded was either "depression" or a "psychiatric impairment."

It appears to us that the court below misunderstood the nature of Ms. Gasaway's arguments. "Depression" is a mood disorder that is described in § 12.04A(1), not in § 12.05C, of the relevant SSA regulations. In addition, although the SSA regulations do not include a category specifically denominated "psychiatric impairments," we believe that such impairments are appropriately described in the SSA regulations with respect to "schizophrenic, paranoid, and other disorders" (§ 12.03), "affective disorders" (§ 12.04), "anxiety-related disorders" (§ 12.06), "personality disorders" (§ 12.08), and "substance addiction disorders" (§ 12.09B, § 12.09C, § 12.09D). In contrast, "mental retardation" is a deficit in intellectual functioning, *see* § 12.00D, ¶¶ 6-9, and § 12.05 (mental retardation); *see also* § 12.02A(7) (organic mental disorders).

-3-

Nonetheless, since we review a grant of summary judgment *de novo*, *see*, *e.g.*, *Box v. Shalala*, 52 F.3d 168, 170 (8th Cir. 1995), we may examine for ourselves whether Ms. Gasaway raised the question of mental retardation as a basis for disability benefits to such an extent that the ALJ was obligated to investigate further before determining that it was appropriate to evaluate Ms. Gasaway's residual functional capacity. *See*, *e.g.*, *Battles v. Shalala*, 36 F.3d 43, 45, 45 n.2 (8th Cir. 1994); *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992); *Salts v. Sullivan*, 958 F.2d 840, 844-45 (8th Cir. 1992); *Thompson v. Sullivan*, 878 F.2d 1108, 1110 (8th Cir. 1989); and *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) (*per curiam*).

## II.

In *Thompson*, 878 F.2d at 1109, the claimant failed to list mental retardation on her initial application as a basis for disability benefits, citing instead heart trouble, diabetes, and the effects of childhood polio. On a supplemental information form evidently submitted after her initial application, the claimant listed her past jobs as a cleaning maid for a bank and for a private home. An SSA representative who apparently interviewed the claimant about those jobs noted on the supplemental form that the claimant's work was "not comparable" to the work of "other maids in the neighborhood." *Id.*

At a hearing with an ALJ, the claimant (who was not represented by a lawyer) testified that because of her physical impairments, she sometimes had to ask her son and granddaughter to clean the bank for her. *Id.* She further stated that she was currently able to clean only one private home per week, rather than the "several" that she used to clean every week, and that she had managed to keep that job solely because the homeowner "did not care if [the claimant] arrived on time" or if "she had to leave to go back to bed because her chest hurt." *Id.* at 1109-10.

The ALJ, the SSA Appeals Council, and the district court denied the claimant's application for disability benefits. *Id.* at 1110. We remanded the case with instructions

-4-

to the SSA to develop the record with respect to whether the claimant's jobs could be considered substantial gainful activity in light of the special circumstances attendant to their performance. *Id.* at 1110-11. Evidently *sua sponte*, we also directed the SSA to consider the significance of a vocational evaluation (submitted to the SSA Appeals Council, but not to the ALJ) stating that the claimant was "profoundly mentally retarded," *id.*

In *Dozier*, 754 F.2d at 276, the claimant failed to list any mental impairments on her initial application as a basis for disability benefits, citing instead severe headaches and back pain. Her medical records showed a fairly recent diagnosis of migraine headaches and a prescription for Valium, an anti-anxiety drug. *Id.* at 275. An SSA consulting internist examined the claimant and diagnosed her as having "chronic anxiety" but expressed doubt about whether she did in fact suffer migraine headaches. *Id.* at 276.

At a hearing with an ALJ, the claimant testified that she had migraine headaches "two or three times a week," that she suffered from "nerves," and that she "had taken" antidepressants (evidently, at some time in the past, but implying, in our view, that she was not currently doing so). *Id.* at 275. At the hearing, the claimant's daughter stated that her mother's headaches were "frequent and debilitating" and that her mother also suffered from "crying spells." *Id.*

The ALJ, the SSA Appeals Council (apparently), and the district court denied the claimant's application for disability benefits. *Id.* at 275-76. We remanded the case with instructions to the SSA to develop the record, specifically by obtaining consultative examinations of the claimant by a neurologist and by a psychiatrist or a psychologist, with the object being to evaluate the claimant's anxiety and to determine whether her allegations of pain were "psychological in origin." *Id.* at 276.

Ms. Gasaway's original application for disability benefits cited back pain, carpal tunnel syndrome, high blood pressure, and tachycardia. On a supplemental information form submitted approximately a week after her original application, Ms. Gasaway noted that she finished high school but that she was in "special education" classes from the first through twelfth grades because of "slow learning." As exhibits for the ALJ to consider, Ms. Gasaway submitted her high school transcript, which included certain test results. The transcript confirmed that she was enrolled in "special education" classes for all substantive subjects through the twelfth grade and that she received a "work study diploma" (there was some suggestion during the hearing with the ALJ that such a diploma was less of an achievement than a "general diploma," but the discussion is unclear on that point). The test results on Ms. Gasaway's high school transcript showed that she had a verbal IQ of 69, as measured by the psychological test preferred in the SSA regulations for determining mental retardation. At the hearing with the ALJ, Ms. Gasaway's mother characterized her daughter's "academic skills" as "very poor."

Ms. Gasaway also submitted to the ALJ a state rehabilitation services questionnaire that was filled out by a state rehabilitation counselor two years before Ms. Gasaway's initial application for disability benefits. The questionnaire showed that Ms. Gasaway had listed "problems with learning" as among the disabilities to be considered in evaluating her potential for state rehabilitation services. In addition, Ms. Gasaway submitted to the ALJ records that reflected visits to a medical clinic about a year after her initial application for disability benefits. Those records noted "mental retardation" in their summary of Ms. Gasaway's past medical history.

In short, in Ms. Gasaway's case, the ALJ possessed, from the beginning, various reports showing that Ms. Gasaway always attended "special education" classes in school and that her verbal IQ was so low that she could presumptively be considered mentally retarded. Other documents that she submitted to the ALJ contained specific references to learning problems and to a medical history noting mental retardation. Yet the ALJ failed to include in his report any indication that he evaluated and rejected, or

even noticed, the possibility that Ms. Gasaway might be mentally impaired in some way.

In our view, the claimants in *Thompson*, 878 F.2d at 1110-11, and *Dozier*, 754 F.2d at 276, offered far less evidence of mental impairments than Ms. Gasaway did. In addition, in each of those cases, the claimant failed to assert explicitly – in either the initial application, at a hearing with an ALJ, or, evidently, in the record for the SSA Appeals Council – any mental impairments as a basis for disability benefits. In each of those cases, however, we directed the SSA to develop the record further with respect to possible mental impairments of the claimant. In Ms. Gasaway's case, therefore, we hold that she raised the question of mental retardation sufficiently well to obligate the ALJ to investigate her mental abilities further before determining that it was appropriate to evaluate her residual functional capacity. We turn, then, to the question of whether it is more appropriate to remand the case or simply to reverse the court below and to direct the entry of summary judgment for Ms. Gasaway.

To meet the requirements for the first criterion under § 12.05C of the relevant SSA regulations, a claimant must have, at the least, a "valid verbal, performance or full scale IQ of 60 through 70" on the psychological test preferred in the SSA regulations for determining mental retardation. Ms. Gasaway has a qualifying verbal IQ; however, we observe that at the hearing with the ALJ, Ms. Gasaway described her day-to-day activities as shopping, visiting others, attending church, volunteering as a cashier at a thrift shop at least twice a week, keeping track of her finances, and doing household chores, including cooking. The transcript of the hearing with the ALJ also shows that Ms. Gasaway had no apparent difficulty understanding and answering the ALJ's questions.

In light of the conflict between Ms. Gasaway's assertions of mental retardation and her description of day-to-day activities that are not hampered, at least not obviously, by a deficit in intellectual functioning, we do not take as a given that her IQ

-7-

scores from 1974 on the relevant psychological test are reliable enough to be used without question twenty-five years later. *See*, *e.g.*, *Boyd*, 960 F.2d at 736. We therefore must remand Ms. Gasaway's case for further development of the record with respect to her current mental impairments, if any.

### III.

To determine what other questions, if any, must also be addressed on remand, we turn of necessity to the possible eventual outcomes of this case once the SSA has developed the record with respect to Ms. Gasaway's current mental impairments. Assuming for the moment that the SSA's development of the record in that regard results in a finding that Ms. Gasaway's current verbal or other IQ unequivocally satisfies the requirements for the first criterion under § 12.05C, the issue becomes whether she meets the requirements for the second criterion under § 12.05C, namely, "a physical or [additional] mental impairment imposing additional and significant work-related limitation of function."

In his decision, the ALJ found that Ms. Gasaway "has severe impairments within the meaning of the [SSA] regulations," *i.e.*, impairments that "significantly limit[] [a claimant's] physical ... ability to do basic work activities," *see* 20 C.F.R. § 404.1520(c); *see also* 42 U.S.C. § 423(d)(1)(A), § 423(d)(2)(A), § 423(d)(2)(B), and 20 C.F.R. § 404.1521(a). In its answer to Ms. Gasaway's complaint in the court below, the SSA stated that the ALJ's factual findings were "supported by substantial evidence." Nor did the SSA shift from that position in its motion for summary judgment in the court below. Indeed, the motion stated that "no genuine issue of fact" was presented by the ALJ's decision. Although the opinion of the court below stated that there was "little objective support in the record for [Ms. Gasaway's] claim of disability," the court did not specifically address the ALJ's factual findings with respect to whether Ms. Gasaway's physical impairments were "severe" within the meaning of the SSA regulations.

Apparently in passing, the SSA asserted in its appeal brief that Ms. Gasaway's "work history, medical records, and daily activities" would support a conclusion by an ALJ that Ms. Gasaway did not meet the requirements of § 12.05C. The context of that statement and the discussion that followed it, however, made clear that the SSA's focus was on the correctness of the ALJ's finding that Ms. Gasaway had the residual functional capacity to work as a housekeeper/maid (a type of employment that she had previously performed).

The SSA's appeal brief never specifically addressed the correctness of the ALJ's factual finding that Ms. Gasaway's physical impairments were "severe" within the meaning of the SSA regulations. Such a challenge would be contrary to the SSA's position in the court below, and, furthermore, the SSA did not cross-appeal on the issue of the ALJ's finding with respect to the severity of Ms. Gasaway's physical impairments.

We have examined the record thoroughly, and the ALJ's factual finding regarding the severity of Ms. Gasaway's physical impairments is adequately supported by the evidence. We therefore hold that if, on remand, the SSA's development of the record results in a finding that Ms. Gasaway's current verbal or other IQ unequivocally satisfies the requirements for the first criterion under § 12.05C, she is disabled, as a matter of law.

Our review of the record also confirms that, assuming no complications engendered by § 12.05C, the ALJ's factual finding regarding Ms. Gasaway's residual functional capacity to perform "a full range of medium duty work," including work as a housekeeper/maid, is adequately supported by the evidence. We therefore hold that if the SSA's development of the record results in a finding that Ms. Gasaway's current verbal or other IQ does not unequivocally satisfy the requirements for the first criterion under § 12.05C, she is not disabled, as a matter of law.

IV.

For the reasons stated, we vacate the judgment of the court below and remand this case for further proceedings.

LOKEN, Circuit Judge, dissenting.

Robin Gasaway's application for social security disability benefits did not allege a mental impairment. The issue did not arise at her hearing before the administrative law judge. Ms. Gasaway's attorney did not raise the issue in his letter brief to the Commissioner's Appeals Council. Yet the court remands because Ms. Gasaway's Permanent Record from Nettleton High School records a Verbal IQ of 69 on a test administered in January 1974, when Ms. Gasaway was fifteen years old. Though Social Security ALJs have an obligation to develop an adequate record, in my view this antiquated documentary tidbit did not cast sufficient doubt on Ms. Gasaway's many years of satisfactory work as an adult to require the ALJ to pursue the mental impairment issue *sua sponte*. I would affirm the district court because there is substantial evidence in the record as a whole supporting the ALJ's decision. Accordingly, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.