# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2917

_____

Venita Reeder,

       Appellant,

v.

Kenneth S. Apfel, Commissioner,
Social Security Administration,

       Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: February 18, 2000
Filed: June 2, 2000

_____

Before RICHARD S. ARNOLD, LOKEN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Venita Reeder appeals the district court's summary judgment order in favor of the Commissioner of Social Security, affirming the Commissioner's decision to deny her social security disability insurance benefits. We reverse in part and remand for development of the record through proper IQ testing.

I.

Ms. Reeder applied for disability insurance benefits, complaining that she suffered disabling conditions of angina, hiatal hernia, and spurs on her spine. She was initially denied benefits and requested reconsideration. In her reconsideration report, she asserted recent developments of back pain, head pain, and complained that she had to stop driving "because sometimes I didn't know where I was for a long time." (Admin. R. at 134.) Following the denial of her request for reconsideration, she timely requested a hearing before an Administrative Law Judge (ALJ).

At the time of the hearing in March of 1997, Ms. Reeder was 54 years old, had only a fourth grade education, and was not represented by counsel. She complained of intermittent chest pain, but stated she was not taking medication because she could not afford it. Also, she did not think her physical health prevented her from working as much as did her mental health condition. (See id. at 45 ("I think . . . the mental health is why I can't work.").) Her past work record includes mostly seasonal farm labor as a fruit picker, and for a short time, she cared for disabled people in her home. Ms. Reeder testified that she loves plants, does some yard work, reads magazines, occasionally goes fishing, and enjoys visits from her son.

Medical records indicate that Ms. Reeder was treated in a hospital emergency room for chest pain in 1995. Her treadmill test and EKG were both negative at that time. Two consultative physical examinations, one in 1993 and one in 1996, revealed mild arthritis, obesity, mental depression, hiatal hernia, and possible angina. One doctor advised her to cut back on nicotine and caffeine, noting that she had reported smoking one pack of cigarettes a day and drinking one pot of coffee a day. Philip A. Hestand, Ph.D., performed a consultative psychological evaluation of Reeder in 1995. He diagnosed her with major depressive disorder and alcohol dependence in remission with schizoid and dependent personality traits and poor coping skills, though she retains the ability to manage her own funds. He did not perform any valid IQ testing but estimated her IQ as in the range of 70-79. He noted that she may have exaggerated

2

her complaints somewhat and stated that her mental health problems would not improve without treatment.

At the hearing, a vocational expert testified that a person with marginal education, an IQ of 80 (as estimated by the ALJ), depression, and requiring close supervision could perform Reeder's past unskilled work as a farm laborer picking or packing fruit.

Following the hearing, the ALJ found that Ms. Reeder has been diagnosed with major depressive disorder and that she complains of chest pains. The ALJ characterized her impairments as severe, but he concluded that they did not meet or equal the level of severity required for a listed impairment. The ALJ found that Ms. Reeder's subjective complaints of pain were not fully credible and noted that she experiences no physical limitations due to her symptoms. Assuming an estimated IQ of 80, the ALJ concluded that Reeder could return to her past relevant work as a fruit picker and packer, and therefore, she was not disabled. The Appeals Council denied Ms. Reeder's request for review of the ALJ's decision, making the ALJ's determination the final agency decision.

Ms. Reeder timely sought judicial review in the district court and consented to a trial before a magistrate judge, to whom we shall refer as the district court. The case was submitted on motions for summary judgment. The district court concluded that the medical evidence did not support an allegation of disability. Ms. Reeder argued that the ALJ failed to adequately develop the record regarding her mental limitations by not obtaining a valid IQ test. The district court disagreed, noting that the ALJ did order a consultative examination for mental disorders and that Dr. Hestand reported that her mental health would not improve without treatment, which Ms. Reeder has never sought. The district court concluded that the record did not support Ms. Reeder's allegation of a disabling condition because any condition that could be helped with treatment cannot be considered disabling.

3

Ms. Reeder also argued that her past earnings as a seasonal fruit picker and packer were insufficient to amount to substantial gainful activity and thus cannot qualify as past relevant work. The district court reasoned that although her jobs were seasonal, she reported being engaged in this type of work for at least five years, and thus, the ALJ did not err in determining that this could constitute past relevant work. The district court concluded that there was substantial evidence in the whole record to support the ALJ's determination in this case. Ms. Reeder appeals.

## II.
### A.

In this appeal, Ms. Reeder first argues that the ALJ's decision is not supported by substantial evidence, because the ALJ failed to adequately develop the record regarding her intellectual functioning. We review the district court's grant of summary judgment to the Commissioner under a de novo standard. See Gasaway v. Apfel, 187 F.3d 840, 842 (8th Cir.), panel reh'g granted on other grounds, 195 F.3d 345 (8th Cir. 1999). We consider the Commissioner's denial of benefits to determine whether substantial evidence on the whole record supports the decision. See Holland v. Apfel, 153 F.3d 620, 621 (8th Cir. 1998). We bear in mind that the administrative hearing is not adversarial in nature, and the ALJ has a duty to develop facts fully and fairly, especially in a case where the claimant is not represented by counsel. See Cox v. Apfel, 160 F.3d 1203, 1209 (8th Cir. 1998).

The mental retardation listing of § 12.05(D) directs a finding of disability if the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. In this case, the ALJ ordered a consultative mental health examination, but the examiner only provided an estimated range when considering Ms. Reeder's intellectual capacity, and no valid IQ testing was performed. While the consultative examiner estimated that her

4

functioning was within a range of 70 through 79, the ALJ disregarded this estimated range without giving any reasons for doing so. Absent any medical evidence to support his own contrary conclusion, the ALJ instructed the vocational expert to assume an IQ of 80. We conclude, and the Commissioner does not deny, that this was error.

The Commissioner asserts that the ALJ's error in not relying on the physician-estimated IQ is harmless because the estimate of a consulting physician is not entitled to controlling weight and may be discounted if it is inconsistent with the record as a whole. The Commissioner contends that the record demonstrates that Reeder had engaged in substantial gainful activity with this limitation in intellectual functioning in the past and that nothing in the record suggests a worsening mental condition. The ALJ's opinion, however, does not list any reasons for disregarding the consultative examiner's estimated IQ range. Our review of the record convinces us that there exists other record evidence that raises a question concerning Ms. Reeder's level of mental and intellectual functioning.

Ms. Reeder testified before the ALJ that she felt "dumb," that "God didn't give me no sense," and that she often could not remember what to do when she was at a job. (See Admin. R. at 45-46.) Her education achievements do not surpass the fourth-grade level, even though she attended school through the eighth grade. While she had performed fruit picker and packer jobs in the past, she indicated that she recently had to stop driving a car because she sometimes did not know where she was for a long time and she thought her mental health was what made her unable to work. These factors, when combined with the consultative mental health examiner's estimate of an IQ between 70 and 79, indicate the existence of a question concerning Ms. Reeder's present intellectual functioning. We conclude that the ALJ erred by making his own estimate of Ms. Reeder's IQ level, absent any support in the medical evidence and without specifically discrediting the estimate of the sole mental health examiner in this case. For these reasons, and because the examiner estimated an IQ range that includes a level constituting a listed impairment, we conclude that the ALJ erred by ignoring the

opinion of the consulting mental health examiner and not further developing the record through valid IQ testing. See Gasaway, 187 F.3d at 844-45 (remanding for IQ testing and further development of the record with respect to current mental impairments).

In addition to satisfying the IQ requirement, Listing 12.05 requires a showing that the claimant suffers an additional and significant work-related limitation of function. See Holland, 153 F.3d at 621. Ms. Reeder contends that the ALJ erred by not considering all of her physical complaints and their combined effect. The ALJ found that Ms. Reeder suffered severe impairments, but the ALJ did not specifically enumerate which impairments he considered as severe. (See Appellant's Adden. at AD-3.) In his listed findings, the ALJ merely states that "the claimant has complained of chest pain and has been diagnosed with major depressive disorder," neither of which, alone or in combination, amount to a listed impairment. (See id. at AD-6.) At one point, the ALJ concluded that Ms. Reeder suffered no physical impairments, so it appears that he credited only the major depressive disorder. The ALJ also found that Ms. Reeder has the mental capacity to perform a variety of daily activities without limitation, citing her ability to read, visit relatives, and perform yard work. However, the transcript reveals that the ALJ did not conduct a very probing inquiry into her activities. Ms. Reeder testified that she likes to read about flowers, she has one son who visits her, and she did not mention any other relatives. While Ms. Reeder stated that she loves flowers and put a lot in her yard, that was the extent of her testimony. The ALJ did not ask her probing questions to determine her intellectual functioning and did not ask questions relating to her physical capacity, such as how long of a period of time she could work in the yard, whether she was standing or sitting, or whether anyone helped her. (See Admin. R. at 49.) Little can be gleaned from the ALJ's cursory inquiry.

Further, the record indicates that Ms. Reeder has been diagnosed with major depression, obesity (not severe enough itself to satisfy a listed impairment), mild arthritis, hiatal hernia, and possible angina. The ALJ's discussion and findings do not

6

mention the diagnosis of obesity or mild arthritis, and the ALJ does not explicitly consider the combined effect of these impairments. Additionally, medical records indicate some limitations on Ms. Reeder's ability to stand, sit, and lift, which the ALJ does not mention or discredit in his opinion. Although a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case, see Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999), the ALJ is not free to ignore medical evidence but rather must consider the whole record. The activities listed by Ms. Reeder are not so extensive as to preclude the possibility of any limitations by reason of her obesity or her mild arthritis, especially when the medical evidence itself lists some limitations, which the ALJ did not address. Additionally, the conflicts in the record (noted above) indicating some trouble with her mental or intellectual functioning indicate a need for further development of the record.

We do not decide today whether or not Ms. Reeder has an additional and significant work-related limitation of function to satisfy the second prong of Listing 12.05. However, because the ALJ's opinion raises so many questions and appears to have ignored some of the medical evidence of other impairments, we cannot conclude that the ALJ's error in not further developing the record as to Ms. Reeder's intellectual functioning is harmless.

Ms. Reeder also contends that the ALJ erred by not accurately considering the combined effect of her impairments and not accurately relating those impairments to the vocational expert. Any hypothetical questions presented to a vocational expert "must fairly reflect the abilities and impairments of the claimant as evidenced in the record" in order to be relevant in determining a claimant's residual functional capacity. Cox, 160 F.3d at 1207. The hypothetical question presented to the vocational expert in this case stated the ALJ's estimated IQ of 80, which is not supported by medical evidence in the record and which the Commissioner agrees was error. On remand, the ALJ must be careful to make credibility findings regarding all alleged impairments and

7

to include all credited impairments in any hypothetical question presented to the vocational expert.

Finally, Ms. Reeder contends the ALJ erred by determining that she could return to her past relevant work as a fruit picker and packer. Specifically, she contends that the low level of income she earned through this past employment does not satisfy the requirement of substantial gainful activity under the earning guidelines of the regulations. See 20 C.F.R. § 404.1574(b).

To be relevant, past work must have been done within the last 15 years, lasted long enough for the person to learn to do it, and constituted "substantial gainful activity." See 20 C.F.R. § 404.1565(a). The regulations define substantial gainful activity as work activity that involves doing significant physical or mental activities, even if done on a part-time basis, and work that is done for pay or profit, whether or not a profit is realized. See id. § 404.1572(a), (b). A claimant's earnings "will ordinarily show" that a claimant has engaged in substantial gainful activity if the "earnings averaged more than $300 a month in calendar years after 1979 and before 1990," and "more than $500 a month in calendar years after 1989." Id. § 404.1574(b)(2)(vi), (vii). The regulations also state that earnings "will ordinarily show" no substantial gainful activity when the claimant's monthly earnings averaged less than $190 in calendar years after 1979 and before 1990, and less than $300 in calendar years after 1989. Id. § 404.1574(b)(3)(vi), (vii). However, "the fact that your earnings are not substantial will not necessarily show that you are not able to do substantial gainful activity." Id. § 404.1574(a)(1).

Ms. Reeder's average monthly earnings in 1990 were $221, and for the years from 1985 to 1989 she averaged between $175 and $193 per month. She asserts that her intermittent work does not support a finding that she was engaged in substantial gainful activity because, with only one exception, her average monthly earnings (averaged over 12 months) were below the guidelines. To the contrary, the Commissioner suggests that her earnings satisfy the regulations by averaging her monthly income only over the four or five months when she was actually seasonally employed, rather than over the entire year.

We find it unnecessary to engage in this averaging debate. Even assuming Ms. Reeder's earnings were below the guidelines, we find no error here. "Although earnings below the guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful activity, earnings below the guidelines will not conclusively show that an employee has not engaged in substantial gainful activity." Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993) (citing 20 C.F.R. § 404.1574(a)(1)). The regulations state that work may be considered substantial even if it is part-time, see id. § 404.1572(a), which is similar to seasonal work. While work that is only "off-and-on" will not be considered, see id. § 404.1565(a), work may be considered gainful even if no profit is realized if it is the type of work usually done for pay or profit. See id. § 404.1572(b).

Ms. Reeder consistently engaged in seasonal fruit-picking work for several years. This work is usually done for pay and involves significant physical or mental activities. Mrs. Reeder learned the job, was capable of performing this type of work, and was able to do the job the entire season--season after season. Her low earnings are more the result of her choice to work only seasonally than an indicator of a physical or mental inability to work the entire year. See Pickner, 985 F.2d at 403 (noting that low earnings were partially due to the fact that the claimant worked only part-time, and noting that work done on a part-time basis may be considered substantial). Regardless of her low earnings, we conclude that Ms. Reeder's seasonal work was substantial

9

gainful activity. Thus, we conclude that the ALJ properly considered Ms. Reeder's past fruit-picking work to be past relevant work without reference to the earning guidelines of the regulations.

## III.

For the reasons stated, we reverse in part and remand for further development of the record and for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.