# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-3512

———————

Ben Hensley,                                    *
                                               *
            Appellant,                         *
                                               *   Appeal from the United States
    v.                                         *   District Court for the
                                               *   Eastern District of Arkansas.
Jo Anne B. Barnhart, Commissioner,             *
Social Security Administration,                *
                                               *
            Appellee.                          *

———————

Submitted:  March 14, 2003

Filed: July 2, 2003

———————

Before BOWMAN, RILEY, and MELLOY, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Ben Hensley appeals the decision of the District Court affirming the denial of his application for social security disability benefits. We reverse and remand the case for further proceedings because the Social Security Commissioner's determination that Hensley retained the ability to engage in substantial gainful activity is not supported by substantial evidence.

Hensley, now forty-two years old, worked off-and-on as an unskilled laborer in various occupations before he injured his back in a work accident in 1993. The

accident, which resulted in a compression fracture of his L4 vertebra and a possibly-herniated disc between the L4 and L5 vertebrae, left Hensley with chronic low-back pain and a lumbar disk bulge.  Following the accident, Hensley was unable to return to work or undertake many daily life activities, though he has cared for his younger, disabled sister and, more recently, assisted with the care of his own young children. Hensley sought disability benefits for his back injuries and for persistent dizzy spells and depression.

Although we review a district court's decision upholding the denial of social security benefits de novo, Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001), our review of the Social Security Commissioner's final decision is deferential; we review that decision only to ensure that it is supported by "substantial evidence in the record as a whole," Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  We also review the record mindful of the ALJ's "duty to develop the record fully and fairly" during its non-adversarial hearings.  Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992) (quoting Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983)).

Social Security disability determinations are made using the familiar five-part inquiry.  See 20 C.F.R. §§ 404.1520 & 416.920 (2002).  In this case, the parties largely agree about the outcome of the first four steps: that Hensley has not engaged in substantial gainful activity since he was injured; that his injury and other conditions amount to a severe impairment; that these impairments are not of listing-level severity; and that his impairments prevent him from doing his past relevant work.  Because all parties agree that Hensley can no longer work as an unskilled laborer, the crux of this case concerns Hensley's ability to engage in substantial gainful activity; i.e., whether Hensley is able to perform other work in the national economy in view of his age, education, and experience.  See id. § 404.1520(f).  In a situation like Hensley's, where the claimant's impairments prevent him or her from performing his or her past relevant work, the claim must be considered in light of several vocational factors (age, education, and work experience) and the individual's

residual functional capacity. Id. § 404.1520(f). The result of this two-pronged inquiry determines whether the individual is disabled or can still engage in "substantial gainful activity." See id.; 20 C.F.R. § 404, Pt. 404, Subpt. P., App. 2, § 200.00 (2002).

The ALJ determined, and the Commissioner agreed, that Hensley retained the residual functional capacity to perform the full range of sedentary work and—in combination with his age, education, and work experience—concluded that Hensley was not legally disabled. Social Security Administration (SSA) Decision at 11-12 (July 28, 2000). The ALJ's decision was based in part on its determination that at least some of Hensley's subjective complaints regarding pain and persistent dizziness were not supported by the relevant medical evidence. In addition, the ALJ determined that Hensley possessed at least a limited education. On appeal, Hensley urges that the ALJ erred when it concluded that he could physically perform the full range of sedentary work, when it discounted the opinions of his treating physician, and when it concluded that he was not illiterate. Regarding that last determination, we conclude that the ALJ failed "to develop the record fully and fairly" concerning Hensley's proffered illiteracy. In light of the uncontradicted testimony given by Hensley regarding his inability to read, we conclude that the Commissioner's conclusions regarding Hensley's educational level and, consequently, his ability to engage in substantial gainful activity are not supported by substantial evidence.

The ALJ concluded that Hensley had completed the eighth grade and that he had a "limited education" within the meaning of the Social Security regulations. SSA Decision at 12. Within the realm of the Social Security regulations, a limited education is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). The great weight of the evidence, however, does not support this conclusion.

At his hearings, Hensley testified that he completed his education only through the seventh grade. Transcript of ALJ Hearing at 2 (July 22, 1997); Transcript of ALJ Hearing at 3 (Jan 24. 2000). At his first hearing in 1997, he testified that, although he could do some arithmetic, such as count money, he could not balance a checkbook very well. Tr. at 2 (1997). Hensley's testimony also left the impression that he was illiterate when, after he was asked whether he could read or write, he answered "no." Id. At his 2000 hearing, his testimony was as follows:

> Q: Can you read and write?
> A: Not very good. Just sign my name, that's about it.
> Q: If you were having someone come in and do some repairs at your home, could you write the repairman a note that he could understand? Like fix the sink in the bathroom?
> A: I can't spell at all.
> Q: If, if [sic] a repairman did some work in your home, and left you a note telling you that he had fixed the sink and done some repairs, could you read the note?
> A: Partially, good enough to maybe figure it out, yeah.

Tr. at 3 (2000).

Given his testimony about his inability to read and write, the great weight of Hensley's testimony strongly suggests that he falls within the Social Security Administration's definition of "illiteracy," that is, the inability to "read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). When it analyzed Hensley's claim, however, the ALJ determined that Hensley had progressed through the eighth grade and had a "limited education." SSA Decision at 12. Because it determined that he possessed at least a limited education, the ALJ then analyzed Hensley's claim under Rule 201.24 and determined he was not disabled. See 20 C.F.R. § 404, Pt. 404, Subpt. P., App. 2, Table 1, Rule 201.24 (2002). If actually illiterate, Hensley's claim

should have been analyzed under Rule 201.23 and the ALJ should have made an "individualized determination" regarding Hensley's claim. See id. at Rule 201.23.

It is true, as the District Court correctly noted, that under Rule 201.23, a claimant aged 18-44, who is illiterate, and who has only performed unskilled work, is still presumed to be not disabled. However, this presumption is misleading and largely irrelevant to this case for two reasons. In the first instance, Rules 201.23 and 201.24 both reference § 201(h), which, in the "sedentary work" residual functional capacity regulations, is followed by § 201(i). See 20 C.F.R. § 404, Pt. 404, Subpt. P., App. 2, §§ 201(h), 201(i) (2002). Sections 201(h) and 201(i) both anticipate that, following an individualized determination, some individuals who are unable to perform the full range of sedentary work activities, because of a deficient education or otherwise, may be found to be disabled. Id. Further, the structure of the Rules is such that increased claimant age coupled with decreased claimant education and work skills, correspond to an increased likelihood of a "favorable" disability determination. Id. at Table No. 1. Thus, while a claimant who fits Rule 201.23's criteria is still presumed to be "not disabled," the presumption is not as strong.

Second, and more important, when nonexertional factors (such as education) limit the claimant's ability to perform the full range of sedentary work, the Rules call for an "adjudicative assessment" in which an "individualized determination" is made concerning whether the claimant will be able to make the transition to other work. Id. § 201(h)(3); Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999) (noting that where "nonexertional impairments significantly affect the [claimant's residual functional capacity] . . . the guidelines are not controlling and may not be used to direct a conclusion of not disabled"). In short, because a claimant's education level can be "crucial," the Rules contemplate an individualized determination of whether Hensley is illiterate or not. On remand, Hensley may or may not be found to be illiterate, but at this point we cannot agree that there is substantial evidence that he possesses at least a "limited education" as defined in the Social Security regulations.

It is the absence of evidence concerning Hensley's education and intellectual abilities that distinguishes the present case from Howard v. Massanari, 255 F.3d 577 (8th Cir. 2001), where essentially the same question was presented. In Howard we upheld the ALJ's determination that the claimant was literate and therefore not entitled to disability benefits. Id. at 585. We upheld the ALJ's ruling notwithstanding our observation that "[b]ecause the literacy question is crucial, the ALJ should have developed a stronger record on this point." Id. at 584. Noteworthy of that case was the relative abundance of testimony that the ALJ heard on the claimant's education and intellectual abilities. In Howard, the claimant had passed her licensed practical nurse exam (though she testified that someone had to read it to her), she completed the ninth grade (though she received low or failing grades, especially in reading), the results of at least one intelligence test and a psychological evaluation were available, and the claimant was enrolled in reading classes while her claim was pending. Id. In contrast, the present record contains little direct evidence regarding Hensley's education or intellectual abilities save his several statements suggesting that he is illiterate. Moreover, in Howard, the ALJ specifically addressed the issue after hearing testimony on the matter. Given the lack of evidence on this "crucial" issue, we must remand for further proceedings so that the ALJ may make an individualized determination on this issue. Id.; see also Wilcutts v. Apfel, 143 F.3d 1134, 1137 (8th Cir. 1998) (remanding and noting that testimony regarding claimant's intellectual abilities "should have alerted the Commissioner to the need to establish whether or not Wilcutts is literate").

Accordingly, the decision of the District Court is reversed and this matter is remanded to the District Court with instructions to remand the matter to the Commissioner for a new administrative decision. On remand, the Commissioner shall consider whether, if still impaired, Hensley is able to engage in substantial gainful activity in light of his age, education, and experience.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.