# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1483

_____

Teena Draper,

         Appellant,

v.

Jo Anne B. Barnhart, Commissioner,
Social Security Administration,

         Appellee.

\*       Appeal From the United States
\*       District Court for the
\*       Western District of Arkansas.

_____

Submitted: September 21, 2005
Filed: October 13, 2005

_____

Before MURPHY, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Teena Draper appeals from a judgment of the United States District Court for the Western District of Arkansas affirming the decision of an administrative law judge (ALJ), on behalf of the Commissioner of the Social Security Administration (Commissioner). The ALJ found that Draper was not entitled to a period of disability insurance benefits nor eligible for Supplemental Security Income under the Social Security Act. We reverse and remand.

## Background

Teena Draper is a 34-year-old single woman. She is a high school graduate and has an Associate degree from a technical college. She served in the United States Army Reserves from May 1984 to May 1990. After graduating from college, she worked at the International Paper Company from 1987 to 1996, and the Pine Bluff Cutting Tool Company from March 1996 to October 1996. She was self-employed from December 1996 to December 1997. In February 1998, she commenced working for the DUB Clenney Construction Company. On April 6, 1999, she suffered an injury at work that resulted in a herniated disk and two bulging disks. Draper received therapy and other treatment for her back injuries over a period of time. All treating physicians agreed that she was anxious to return to work and that there was no evidence of malingering on her part.

In 2000, Draper took a job with the Malvern Country Club as a cashier, earning $14,000 a year. In 2001, Draper was hired by Carolyn Overton Electric, Inc. (Overton). She testified that one day a supervisor of that company came into the Country Club and offered her a job, knowing she had a bad back. Draper worked at Overton for a little over a year, but it is not at all clear from the record precisely what work she did while employed at Overton. It appears that she initially fed boards into a paint line, and was later moved to another position, supervising employees painting boards, watching production reports, and keeping an eye on the machines. Draper eventually left Overton, due to extreme pain in her lower back, her hips, and her thighs. She testified: "Well, I didn't quit. I just wasn't able to go out there and work. And he didn't have anything I could do." (Admin. Agency R. at 164.)

On September 20, 2002, Draper filed an application for disability insurance benefits and Supplemental Security Income payments. The claim was denied initially and upon reconsideration. The ALJ found that Draper has degenerative disk disease of the lumbosacral spine, a severe impairment, but not one severe enough to meet or

medically equal a listed impairment. The ALJ further found that Draper was unable to perform any of her past relevant work, but denied relief under the theory that she had the residual functional capacity to perform a full range of light work. A vocational expert was not called to determine whether there was available work in the national economy that Draper could actually perform in light of her exertional and nonexertional limitations. Draper then sought relief in district court, which also denied her claim. This appeal followed.

## Discussion

In reviewing the Commissioner's ruling, our task is to determine if her denial of benefits is supported by substantial evidence. Brosnahan v. Barnhart, 336 F.3d 671, 675-76 (8th Cir. 2003). Substantial evidence has been described as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision." Id. at 675. Such a determination requires us not only to consider evidence in the record that supports the Commissioner's determination, but also any evidence that detracts from that conclusion. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001). While a "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case," inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand. Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000); Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992).

We are troubled by a material inconsistency in the ALJ's findings and conclusions, which necessitates a remand. The ALJ found that Draper was unable to perform any of her past work. This past work included work as a cashier, a supervisor, and other work at Overton. Draper's work as a cashier is properly classified as light work, as was some of the work she performed at Overton, mainly supervising a paint line. See generally § 211, Cashiers and Tellers, Dictionary of Occupational Titles, (4th ed.); and § 840.131-010, -014, Painting Supervisor.

Because the record does not specify the other work Draper did at Overton, we cannot say whether it would be classified as sedentary, light, medium, or heavy. See 20 C.F.R. §§ 404.1567 & 416.967 (defining work classifications). The ALJ's finding that Draper cannot perform her past work is therefore clearly inconsistent with the ALJ's conclusion that Draper "has the residual functional capacity to perform the full range of light work." (Admin. Agency R. at 24.) Obviously, the Commissioner cannot meet its burden to show Draper has the residual functional capacity to perform light work, given the ALJ's contrary conclusion with respect to Draper's past work. See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (noting that once a claimant establishes inability to perform her past relevant work, the burden shifts to the Commissioner to "prove that there are other jobs in the national economy that the claimant can perform"). Thus, we must remand for further proceedings to resolve this conflict.[1]

The ALJ further found that Draper's allegations of disabling pain were "inconsistent with her reports with regard to her normal daily activities and are therefore not considered credible." (Admin. Agency R. at 21.) Substantial evidence on the record as a whole does not support this conclusion. Draper testified that after she was injured, she went back to work at the Malvern Country Club as a cashier and then as an employee at Overton. She further testified that she had to leave the job at Overton because the pain was so bad in her lower back, left hip, and thighs that she could not take it. She stated she is no longer able to work. She walks around and tries, with the help of her brother and mother, to keep her home clean, but takes care not to exert herself. She does not want to sit all the time, because sitting for prolonged periods makes her pain worse. She can sit for twenty minutes without being in pain, drive a car, and stand without difficulty for ten or fifteen minutes. She

---

[1]We anticipate that further proceedings would include testimony as to the work that she actually performed while at Overton, and if light, whether she quit Overton because she was unable to perform even that light work.

can bend over, but cannot get up, and she can lift six to eight pounds.  She does her own cooking, mopping, and sweeping, but when she starts to feel pain, she sits down.  She has difficulty sleeping, regularly waking up at 2:00 a.m., 4:00 a.m., and 6:00 a.m.[2]  (Admin. Agency R. 167-174.)

The ALJ discounted the above evidence because Draper's activities of daily living involved some light exertional activities, such as household chores, laundry, grocery shopping, mowing, and other chores.[3]  The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir. 1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work.  In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light

_____

[2]Draper completed a Supplemental Disability Interview Outline (Admin. Agency R. 100-104), which is largely consistent with her oral testimony.  She added that she does her own shopping, pays her bills, watches TV, and visits friends.  She takes several prescription medications for her pain and other ailments.  Nothing in the record reveals any material inconsistency between Draper's testimony and the forms she submitted to the Commissioner.

[3]Implicit in this finding is a conclusion that these activities are equivalent to light work, a conclusion inconsistent with the finding that Draper could no longer perform light work which she performed in the past.

housekeeping, grocery shopping, and visiting friends. We found this to be an unpersuasive reason to deny benefits: "We have repeatedly held . . . that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995)). Moreover, we have reminded the Commissioner

> that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. . . . The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.

Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989) (citations omitted).

The ALJ's refusal to call a vocational expert compounded its error in failing to credit Draper's subjective complaints of pain. Our cases have often explained the rule with respect to the decision to call a vocational expert where there is a nonexertional impairment:

> Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert. Groeper v. Sullivan, 932 F.2d 1234, 1235 n.1 (8th Cir. 1991). . . . The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC [residual functional capacity] to perform the full range of activities listed in the guidelines.

<u>Reed v. Sullivan</u>, 988 F.2d 812, 816 (8th Cir. 1993). The omission of testimony from a vocational expert here leaves us with an undeveloped and inconsistent record, and provides us no alternative but to remand for further proceedings.

**Conclusion**

In summary, we reverse the decision of the district court with directions to remand to the Commissioner for further proceedings. The here noted inconsistencies in the record should be clarified, and the nature of the duties Draper performed at Overton should be fully explored. Moreover, a vocational expert should be called by the ALJ to assist in the determination of whether, despite Draper's exertional and nonexertional limitations, she has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." <u>McCoy</u>, 683 F.2d at 1147.

_____