**Carole K. LEIGH, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**Civ. No. 3–93–CV–10192.**

United States District Court,
S.D. Iowa,
Davenport Division.

Aug. 22, 1994.

---

Michael DePree, Wells, McNally & Bowman, Davenport, IA, for plaintiff.

Christopher Hagen, Asst. U.S. Atty., Des Moines, IA, for defendant.

## ORDER

LONGSTAFF, District Judge.

Plaintiff seeks review of the Secretary of Health and Human Services' decision denying her Social Security benefits. Claimant asserts she is entitled to the Widow's Benefits under Title II of the Social Security Act (Disability Insurance Benefits). Pursuant to 42 U.S.C. § 405(g), this court may review the final decision of the Secretary.

### I. PROCEDURAL HISTORY

Leigh, who is presently 58 years old, initially applied for Social Security benefits on October 15, 1990, alleging disability since November 27, 1987. She was denied benefits and reconsideration of that decision. She did not request an administrative hearing regarding this application.

The claimant then filed a new application for benefits on November 22, 1991, alleging the same date of onset. Again, she was denied initially and upon reconsideration. Pursuant to a timely request, a hearing was held April 5, 1993, before an Administrative Law Judge (ALJ). The ALJ found the claimant was not under a disability as defined by the Act. On October 25, 1993, the Appeals Council refused the request for review, and the decision of the ALJ is the final decision of the Secretary. This action for review of the Secretary's decision was commenced December 9, 1993.

### II. FINDINGS OF THE SECRETARY

The ALJ made the following findings. The claimant is the widow of the wage earner who died fully insured on November 27, 1987, and the claimant is not remarried. She has not engaged in substantial gainful activity since at least November 27, 1987. The medi-

cal evidence establishes that she has a bilateral hearing loss, speech impediment, and complaints of frequency of urination, but that her impairment or combination of impairments do not meet or equal any listed in Appendix 1, Subpart P, Regulations No. 4.

The ALJ found the testimony of Leigh to be not credible regarding the intensity and severity of the symptoms. Thus, the ALJ found that she retained the residual functional capacity (RFC) to perform work except for lifting of more than 20 pounds on occasion, lifting and carrying more than 10 pounds frequently, exposure to loud noises, and work which would not allow her to use the rest room once each hour.

Based upon this RFC, the ALJ found that the claimant had the capacity to return to her past relevant work as a kitchen helper or cafeteria helper, and was therefore, not disabled as defined by the Act.

## III. DISCUSSION OF APPLICABLE LAW

Plaintiff does not argue that substantial evidence on the record as a whole fails to support the ALJ's decision. Instead, she argues that the ALJ failed to correctly following the sequential analysis and apply the correct standard of law.

### A. Degree of Impairment

■ The Secretary has established a five-step process for determining whether a person is disabled: (1) determine whether claimant is engaged in substantial gainful activity; (2) determine whether the claimant has a severe impairment which significantly limits the ability to do basic work activity; (3) determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations; (4) consider claimant's residual functional capacity and whether the claimant can still perform her previous work; and (5) whether any substantial gainful activity exists in the national economy which the claimant can perform. 20 C.F.R. § 416.920; *Boyd v. Sullivan,* 960 F.2d 733, 735 (8th Cir.1992).

The ALJ found the claimant had not engaged in substantial gainful activity, and that she had severe impairments. He did not find that any of these impairments or combinations thereof meets or equaled an impairment listed in the regulations. Instead, the ALJ found that Leigh could return to her past relevant work as a kitchen helper or cafeteria helper. Plaintiff claims it was error for the ALJ to even address whether she could return to her past relevant work because she has an impairment which meets or equals one of the impairments listed in the regulations.

■ Plaintiff argues that her impairments meet the listings of 20 C.F.R. 404.1599, Appendix 1 to Subpart P, 2.09, Organic loss of speech due to any cause with inability to produce by any means speech which can be heard, understood, and sustained. In his decision, the ALJ specifically found that this impediment did not meet or equal a listed impairment because she would only meet the listings if she was "unable, by any means, to produce speech which can be heard, understood, and sustained." Tr. at 18.

The Secretary has explained how loss of speech is to be evaluated:

Ordinarily, when an individual's impairment prevents effective speech, the loss of function is sufficiently severe so that an allowance under Listing 2.09 is justified on the basis of medical considerations alone, unless such a finding is rebutted by work activity. To speak effectively, an individual must be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in social and vocational settings .... Three attributes of speech pertinent to the evaluation of speech proficiency are: (1) audibility—the ability to speak at a level sufficient to be heard; (2) intelligibility—the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) functional efficiency—the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time. When at least *one* of these attributes is missing, overall speech function is not considered effective.

Social Security Ruling 82–57 (emphasis original). In further defining "intelligibility," the Secretary has stated that factors to consider

are the frequency of any difficulties with pronunciation, the extent to which the individual is asked to repeat, and how well he or she is understood by strangers unaccustomed to hearing speech. *Id.* In defining "functional efficiency," the evaluator should consider how long the claimant is able to sustain consecutive speech; the number of words spoken without interruption or hesitancy and whether the claimant appears fatigued and for how long. *Id.*

In order to evaluate plaintiff's speech impairment, the Disability Determination Services Bureau in Des Moines, Iowa, referred the claimant to Speech/Language Pathologists Linda McNeill and Lori Devore Dryg in Davenport, Iowa. The evaluation was performed May 5, 1992, and it was found that Leigh had a severe level of impairment. Tr. at 150 (raw score of 34 based on the Stuttering Severity Instrument). The evaluators noted that while her speech was generally heard and understood at the 80th percentile, her secondary behavior characteristics, speaking on inspiration, lip pressing, jaw muscle tensing, head jerks, eye blinks, some avoidance of eye contact, facial grimacing, and shoulder movement, "were rated as very distracting on the SSI and were significant interfering factors in her communication." Thus, it was concluded that the claimant had "a severe impairment in fluency and mild impairment of single work and sentence intelligibility.... The severity of this client's problem would also lead us to believe that she would have difficulty communicating during job interviews and on tasks requiring extended verbal interactions." Tr. at 150.

The severe impairment of fluency and the extreme behavioral characteristics supports the contention that her functional efficiency is at best minimal and often nonexistent. This leads the court to find that one of the three essential attributes of speech is missing, and her overall speech function is not considered effective. When this is coupled with her diminished capacity for intelligibility (80%), the court finds that the plaintiff meets the regulation listings of organic loss of speech as set out in section 2.09.

Having met the listings of 2.09, the claimant's impairment in then applied to 20 C.F.R. § 404.1599, Table 2, 202.06. Under this regulation, a claimant who has a listed impairment and who has a residual functional capacity for light work, who is of advanced age, is a high school graduate, and whose skills are not transferable, is disabled under the Act. The ALJ found that the claimant had the above residual functional capacity.

The Secretary was required to find that the plaintiff is disabled under the Act, and she is entitled to benefits.

### B. Res Judicata

■ Plaintiff originally applied for benefits on October 15, 1990, alleging disability since November 27, 1987. She was denied benefits and reconsideration of that decision.

Generally, the district court lacks jurisdiction to review a decision of the Secretary refusing to reopen a claim for benefits because it is not a "final" decision of the Secretary within the meaning of the Act. *Brown v. Sullivan,* 932 F.2d 1243, 1245–46 (8th Cir. 1991), *citing Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Plaintiff argues that because there was no hearing to resolve the contested issues, the doctrine of res judicata cannot be applied.

In *Lewellen v. Sullivan,* 949 F.2d 1015 (8th Cir.1991), the claimant filed an application for disability benefits which was denied.[1] Although aware of his right to appeal, the plaintiff did not appeal the denial. *Id.* at 1016. The claimant's second application was denied initially and on reconsideration. However an administrative hearing was held and the ALJ dismissed the request for review of the earlier determination. *Id.*

Even though Lewellen did not appeal the denial of his first application for benefits, the Eighth Circuit applied the general rule that absent a colorable constitutional claim, decisions of the Secretary declining to reopen previous determinations on the ground of administrative res judicata are not subject to judicial review. *Id.* at 1016, citing *Califano*

1. The claimant was previously receiving benefits, but benefits were terminated when the Secretary determined that plaintiff's disability had ceased. The claimant did not appeal that decision either.

*v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

As in *Lewellen,* the general rule is that this court does not have jurisdiction to review the Secretary's decision declining to reopen Leigh's claim for benefits. Thus, plaintiff's award of benefits shall be calculated from February 12, 1991.[2]

## IV. CONCLUSION

For the forgoing reasons,

IT IS ORDERED that the decision of the Secretary is **reversed.** Benefits are to be computed and awarded by the Secretary in accordance with this decision.

**2.** The claimant's first application was denied     February 11, 1991.