**Anthony MERAZ, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant.**

**No. CV 03–0870–RC.**

United States District Court, C.D. California.

Jan. 23, 2004.

Irene Ruzin, Encino, CA, for Plaintiff.

William B. Spivak, Jr., Assistant United States Attorney, Los Angeles, CA, for Defendant.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Anthony Meraz filed a complaint on February 6, 2003, seeking review of the Commissioner's decision denying his application for disability benefits. On August 26, 2003, plaintiff filed a motion for summary judgment, and on October 24, 2003, defendant filed a cross-motion for summary judgment. The plaintiff filed a reply on November 19, 2003.

## BACKGROUND

### I

On December 27, 2000 (protective filing date), plaintiff filed an application for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a), claiming an inability to work since May 7, 1999, due to injured vocal cords. Certified Administrative Record ("A.R.") 14, 74–76, 78. The plaintiff's application was denied on March 16, 2001. A.R. 58–62. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge James D. Goodman ("ALJ") on August 27, 2002. A.R. 63–64. At the administrative hearing, the plaintiff amended his SSI application to seek a closed period of disability through August 9, 2001, the date surgery successfully restored his voice. A.R. 31–32. On August 30, 2002, the ALJ issued a decision finding plaintiff was not disabled. A.R. 11–19. The plaintiff appealed this decision to the Appeals Council, which denied review on December 4, 2002. A.R. 4–10.

## II

The plaintiff was born on June 10, 1952, and is currently 51 years old. A.R. 74. He has completed three years of college, and has previously worked as a medical clinic manager and service representative. A.R. 79, 84, 91–98.

The plaintiff testified at the administrative hearing that he lost his voice in May 1999. A.R. 33. At first he believed he had laryngitis, but after a month he became concerned and sought medical care. *Id.* In June 1999, J.E. Groveman, M.D., diagnosed plaintiff with dysphonia[1] and practical aphonia,[2] etiology unknown, and began a course of treatment. A.R. 132, 37. On February 6, 2001, Dr. Groveman re-evaluated plaintiff and found he was a candidate for disability. A.R. 130. On April 17, 2001, Dr. Groveman found plaintiff's condition was "unchanged or perhaps somewhat deteriorated," and he further found plaintiff was incapable of sustaining a conversation because "it is difficult to hear and understand him" and "[a]fter moments, he is exhausted and his efforts become unintelligible." A.R. 129. Thus, Dr. Groveman opined plaintiff, "whose entire life revolves around verbal communication[,] is totally disabled and has been since the onset of his vocal cord paralysis." *Id.*

On July 19, 2000, Michael R. Gatto, M.D. performed a nasal endoscopy and nasal pharyngoscopy on plaintiff, diagnosed him with chronic sinusitis, reflux esophagitis and stress dysphonia, and prescribed medication. A.R. 131, 138. On August 14, 2000, Dr. Gatto reevaluated plaintiff and performed a pharyngoscopy, which re-

vealed a slightly sluggish right vocal cord, but no lesions. A.R. 133, 139.

On February 8, 2001, Gerald S. Berke, M.D., performed a fiberoptic cinelaryngoscopy with anatomic and perceptual evaluation of laryngeal function, and diagnosed plaintiff with dysphonia. A.R. 121–22, 127–28, 164. Dr. Berke also found that plaintiff's "left vocal cord appears to be hypomobile or immobile. There is glottic incompetence during phonation. There is increased effort by the false vocal cord during phonation. The right vocal cord is occasionally hypomobile as well." A.R. 122, 128. On April 18, 2001, Dr. Berke found plaintiff has "dysphonia with glottic incompetence during phonation [and] is unable to speak for any length of time at present." A.R. 136, 163. On June 7, 2001, Dr. Berke found plaintiff to be disabled because he "is incapable of sustaining a conversation. After moments he is exhausted and his efforts become unintelligible. At best it is difficult to hear and understand him...." A.R. 162.

A cervical CT-scan taken at the Harbor–UCLA Medical Center on April 30, 2001, showed a subtle, asymmetric fullness of the left false cord, but no vocal cord mass or other cervical mass. A.R. 159. An MRI of the brain taken at Harbor–UCLA on June 12, 2001, was essentially negative. A.R. 160. On August 9, 2001, the plaintiff was admitted to Harbor–UCLA, where he underwent left arytenoid[3] adduction with recurrent laryngeal nerve reinnervation. A.R. 142–48. On August 11, 2001, plaintiff was discharged from the hospital with his voice "much improved" post-operatively. A.R. 142, 154. Indeed, the vocal cord surgery restored plaintiff's ability to speak

---

1. Dysphonia is "any impairment of voice; a difficulty in speaking." *Dorland's Illustrated Medical Dictionary,* 556 (29th ed.2000).

2. Aphonia is a "loss of voice." *Id.* at 113.

3. The left arytenoid cartilage, or cartilago arytenoidea, is "one of the paired, pitcher-shaped cartilages of the back of the larynx at the upper border of the cricoid cartilage." *Dorland's Illustrated Medical Dictionary* at 292–93.

within a few days of the operation. A.R. 31, 36; Plaintiff's Memorandum in Support of Summary Judgment at 2:12–18.

## DISCUSSION

### III

■ The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999); *Meanel,* 172 F.3d at 1113.

■ The claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a *prima facie* case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.920(c). If the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. § 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.920(f). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

Applying the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity during the period at issue. (Step One). The ALJ then found plaintiff had left vocal cord paralysis of unknown etiology, which was a severe impairment (Step Two); however, he did not have an impairment or combination of impairments that met or equaled a Listing. (Step Three). The ALJ next determined plaintiff was unable to perform his past relevant work. (Step Four). Finally, the ALJ concluded plaintiff has the residual functional capacity to perform

work that exists in significant numbers throughout the national economy and, therefore, is not disabled. (Step Five).

## IV

██ In Step Three, "[t]he Commissioner has acknowledged certain impairments to be so severe as to preclude substantial gainful activity. These impairments are set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. A claimant whose impairments or combination of impairments meets or equals the 'Listings' is presumptively disabled." *Regennitter v. Commissioner of the Soc. Sec. Admin.,* 166 F.3d 1294, 1298 n. 2 (9th Cir.1999); *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001). However, the mere diagnosis of an impairment in a Listing does not mean a claimant meets the Listing; rather, a claimant "must also have the findings shown in the Listing of that impairment." 20 C.F.R. § 416.925(d); *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir.1999) ("A generalized assertion of functional problems is not enough to establish disability at step three."). In other words, "[t]o meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099. "To **equal** a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Id.* (citation omitted, emphasis added); 20 C.F.R.

§ 416.926. "A finding of equivalence must be based on medical evidence only." *Lewis,* 236 F.3d at 514; *Tackett,* 180 F.3d at 1100.

Plaintiff contends that, between May 7, 1999,[4] and August 9, 2001, he met or equaled the requirements of Listing 2.09, which applies to a loss of speech "due to any cause, with inability to produce by any means speech that can be heard, understood, or sustained." 20 C.F.R. § 404, Subpart P, App. 1, Rule 2.09. "In evaluating the loss of speech, the ability to produce speech by any means includes the use of mechanical or electronic devices that improve voice or articulation." 20 C.F.R. § 404, Subpart P, App. 1, Section 2.00(B)(3).

The ALJ found plaintiff's "voice impairment limited him to communicating periodically during the day [at] no more than a whisper that could be heard at a distance of five to ten feet, speaking [no] more than one minute to one and a half minutes on an occasional basis." A.R. 16. Nevertheless, the ALJ determined plaintiff did not meet or equal Listing 2.09:

> While the record demonstrates that the [plaintiff] could not sustain speech at a normal level for any extended period of time, it also reveals that his speech was audible and coherent, even though, at times, it was no more than a hoarse whisper. This does not demonstrate that Listing 2.09 was met or equaled. For the listing to be met or equaled **there must be an absolute inability to produce speech,** even when devices, such as amplifiers, are used. There is not a shred of medical evidence that the

4. Although plaintiff seeks an onset date of May 7, 1999, SSI benefits are not payable for a period prior to a claimant's application, 20 C.F.R. § 416.335; *Torres v. Chater,* 125 F.3d 166, 171 n. 1 (3d Cir.1997), which, here, was filed on December 27, 2000. Nonetheless, because benefits are not payable unless a claimant is unable to engage in substantial gainful activity for a continuous period of at least twelve months, a true onset date of May 7, 1999, assists plaintiff. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

[plaintiff's] voice loss was ever this extreme.

A.R. 15 (citations omitted, emphasis added). In determining plaintiff's condition did not meet or equal Listing 2.09, the ALJ committed at least two errors.

 First, contrary to the ALJ's determination, Listing 2.09 does not require "an absolute inability to produce speech." Rather, as Social Security Ruling 82–57 ("SSR")[5] explains, Listing 2.09 may be met if a claimant's condition prevents *effective* speech:

> Ordinarily, when an individual's impairment prevents **effective** speech, the loss of function is sufficiently severe so that an allowance under Listing 2.09 is justified on the basis of medical considerations alone, unless such a finding is rebutted by work activity. **To speak effectively, an individual must be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in social and vocational settings.** These criteria are applicable to the production of speech whether by natural function of the voice mechanism or by the use of a prosthetic device. [¶] Three attributes of speech pertinent to the evaluation of speech proficiency are: (1) audibility—the ability to speak at a level sufficient to be heard; (2) intelligibility—the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) **functional efficiency—the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time. When at least one of these attributes is missing, overall speech function is not considered effective.**

SSR 82–57, 1982 WL 31382, *1 (S.S.A.)(emphasis added).

Here, plaintiff did not have "effective speech" since he did not have "the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time." In fact, the ALJ found plaintiff was limited to only "occasional[ly]" speaking in no more than a whisper for no longer than a minute and a half at a time.[6] Thus, based on the ALJ's findings, as well as the record, plaintiff met Listing 2.09, *see, e.g., Leigh v. Shalala,* 870 F.Supp. 921, 924 (S.D.Iowa 1994) (claimant with "severe impairment of fluency" met Listing 2.09),[7] and the ALJ's determination that plaintiff did not meet Listing 2.09 is not supported by substantial evidence.

5. Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. *Chavez v. Department of Health & Human Servs.,* 103 F.3d 849, 851 (9th Cir. 1996); *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir.1989). Although Social Security Rulings do not have the force of law, *Chavez,* 103 F.3d at 851; *Quang Van Han,* 882 F.2d at 1457, once published, they are binding upon ALJs and the Commissioner. *Holohan v. Massanari,* 246 F.3d 1195, 1202–03 n. 1 (9th Cir.2001); *Gatliff v. Commissioner of the Soc. Sec. Admin.,* 172 F.3d 690, 692 n. 2 (9th Cir.1999).

6. The Social Security Administration has defined occasionally as "occurring from very little up to one-third of the time." SSR 83–10, 1983 WL 31251, *5 (S.S.A.); *Aukland v. Massanari,* 257 F.3d 1033, 1035 (9th Cir. 2001).

7. Other unreported opinions reach the same conclusion. *See Pirtle v. Sec'y of Health & Human Servs.,* 837 F.2d 476, 1988 WL 3436 *2–3 (6th Cir.1988) (Table) (per curiam) (claimant who could only speak softly for limited period before tiring was unable to speak effectively and entitled to disability benefits); *Gresh v. Shalala,* 1994 WL 465828, *3–5 (W.D.Pa.) (claimant with spastic dysphonia met Listing 2.09 when her speech could not be heard, understood and sustained).

 Second, the ALJ also erred in the manner in which he evaluated the opinion of Dr. Groveman, plaintiff's treating physician.[8] Although the ALJ selectively quoted some of Dr. Groveman's opinions, A.R. 15, he ignored Dr. Groveman's opinions that plaintiff is incapable of sustaining a conversation because "it is difficult to hear and understand him" and "[a]fter moments, he is exhausted and his efforts become unintelligible." A.R. 129. To the extent Dr. Groveman's opinions are inconsistent with the ALJ's assessment of plaintiff's functional limitations, the ALJ committed legal error in implicitly rejecting Dr. Groveman's opinions without providing "specific and legitimate reasons" therefore. *Smolen,* 80 F.3d at 1286; *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991).

 "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [this Court] credit[s] that opinion 'as a matter of law.'" *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995) (citations omitted); *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989). Here, properly crediting Dr. Groveman's assessment of plaintiff's limitations, it is clear plaintiff met the requirements of Listing 2.09 for the period from May 9, 1999, to August 9, 2001. *Leigh,* 870 F.Supp. at 924.

### ORDER

The plaintiff's motion for summary judgment IS GRANTED; the defendant's cross-motion for summary judgment IS DENIED; and the Commissioner shall award benefits to the plaintiff under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a), for the period from December 27, 2000, to August 9, 2001, and Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk of Court shall serve copies of this Memorandum Decision and Order and Judgment on the parties.

---

8. The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987); *Morgan,* 169 F.3d at 600. Therefore, "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick,* 157 F.3d at 725; *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir.2001).