In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1873

PATRICIA L. HUGHES,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 4912—**Arlander Keys**, *Magistrate Judge*.

ARGUED DECEMBER 12, 2012—DECIDED JANUARY 16, 2013

Before POSNER, ROVNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*.  An applicant for social security disability benefits appeals from the district court's affirmance of the denial of her application by an administrative law judge, whose decision became final when the Appeals Council of the Social Security Administration declined to review it.

The appellant is a 57-year-old woman who was diagnosed in 2002 with adhesive capsulitis ("frozen shoulder")

in her right shoulder and later with chronic obstructive pulmonary disease. The capsulitis limited the range of motion of her right arm. Physical therapy helped. A doctor from whom she sought treatment for her pulmonary condition concluded that her problem wasn't pulmonary, but was acute sinusitis and related conditions, triggered by allergies, cold virus, dust, cold air, etc., in her nasal passage.

She stopped medical treatment in 2003, possibly because she had no health insurance and a very low income—$4500 to $9000 a year—as a clerical worker. Her last significant employment, which ended in 2007, was as a "night-clerk auditor," a type of hotel clerk, where in addition to clerical work she had to make coffee and fill and empty coffee urns and provide pillows, blankets, and towels to the hotel's guests. She quit because she thought the hotel was about to close. She got another clerical job, but was fired on her first day because unable to lift a box of paper. She then filed for social security disability benefits and resumed seeking medical treatment for her conditions. Examinations revealed that she had regained the full range of arm motion, but that the muscles in her arms and shoulders were weak. And she was again diagnosed with chronic obstructive pulmonary disease, which caused bronchitis, respiratory infections, and shortness of breath.

She testified at the hearing on her application for benefits that during her stint as a hotel clerk she had had to use copious amounts of Tylenol and nasal spray to be able to do the required work and had needed to

put ice on her neck and back after carrying the coffee urns (and so she worked the night shift so that she wouldn't be seen attending to her health problems by her supervisor). She testified that she gets bronchitis between once and four times a year and that in 2008 (the year before the hearing) she had been sick for about 30 days because of a respiratory infection. She explained the adjustments she had had to make in her daily life to cope with the weakness of her shoulders, such as using a small bag instead of a laundry basket to carry laundry and limiting the total weight of her purse to two and a half pounds.

The administrative law judge decided he needed more information and directed that she be examined by an orthopedic surgeon named James P. Elmes. On the basis of the examination Dr. Elmes reported that the applicant is only 5 feet 4 inches tall and weighs only 96 pounds; that X-rays of both shoulders revealed adhesive capsulitis in both, resulting in range-of-motion problems, and also revealed degenerative rotator cuff disease in both; that she could lift or carry up to 10 pounds, but only occasionally; and that she could not tolerate exposure to pulmonary irritants.

The administrative law judge decided that the applicant was capable of performing her past job as a hotel clerk and that therefore she was not disabled. The judge's reasoning is hard to fathom. He ignored the finding by Dr. Elmes—whom, remember, he had appointed to examine the applicant, and with whom the applicant had no prior relationship—that she could lift or carry a 10-pound weight *occasionally*. In fact he disre-

garded Elmes's entire report, on the unexplained ground that it was "not consistent with the medical evidence of record" and "seem[ed] to be based solely on the [applicant's] subjective complaints." The judge did not indicate what "medical evidence of record" he had in mind and he ignored the fact that Elmes had conducted a 90-minute examination of the applicant. He also ignored Elmes's finding that the applicant has degenerative rotator cuff disease.

The judge thought the applicant's failure to have sought medical treatment between 2003 and 2007 inconsistent with her having a disabling medical condition. He noted her explanation that she hadn't had medical insurance or an income large enough to pay for medical treatment out of pocket, but said she could have sought treatment in a hospital emergency room. Remarkably, he seemed unaware that emergency rooms charge for their services and are required to treat an indigent only if the indigent is experiencing a medical emergency. He was troubled by "lack of aggressive treatment" for her health problems, without pausing to consider what "aggressive treatment" might have solved them. He said she *must* be exaggerating her shoulder problems because she had rejected certain medications for them, but he neglected to mention that she had done so because they gave her headaches. She testified that she dislikes taking medicines, but so far as appears this is because of a warranted concern with side effects rather than an irrational antipathy to medical treatment.

The administrative law judge dismissed the applicant's respiratory problems on the ground that she's a smoker and would not be if she really had such problems. He must have forgotten that she'd given up smoking 30 years earlier. The government dismisses this error as a "harmless error," on the ground that other evidence demonstrates conclusively that she is not disabled; it doesn't. Another ungrounded finding was that the applicant can stand or walk for six hours in an eight-hour workday. The administrative law judge also was derisive that a "nasal spray" could treat a serious condition, apparently overlooking the fact that the nasal spray prescribed for the applicant contains cortisone, which can suppress the immune system and cause headaches, nausea, and nose bleeds.

He confused the range of motion in her shoulders with the strength of her arms, maybe because he overlooked her testimony that her clerical employment had required lifting 30 pounds, which was very painful for her. (The coffee urns may well have weighed that much if full; the weight of the coffee alone in a 40-cup coffee urn would exceed 20 pounds.)

He attached great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries. We have remarked the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get

help from other persons ( . . . [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012); see also *Craft v. Astrue,* 539 F.3d 668, 680 (7th Cir. 2008); *Gentle v. Barnhart,* 430 F.3d 865, 867-68 (7th Cir 2005); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248-49 (6th Cir. 2007); *Draper v. Barnhart,* 425 F.3d 1127, 1131 (8th Cir. 2005). The applicant cannot afford to hire a laundress, so she has to do the laundry herself, painful though that may be. She explained, as we noted, that she does so in a way that minimizes the weight she has to lift; the administrative law judge ignored her explanation. She has to buy groceries if she doesn't want to starve, because she has no one to buy them for her; she limits the amount of groceries she buys at any one time, so that the weight will be less. And taking public transportation doesn't involve lifting heavy objects, and is less strenuous than walking while carrying a bag of groceries. And in doing these chores she is not subject to an employer's performance standard; remember that the applicant was fired for being unable to lift a box of paper.

Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine (see *SEC v. Chenery Corp.*, 319 U.S. 80, 87-88 (1943); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)), arguing for example that the administrative law judge rejected Dr. Elmes's report because he is not a pulmonologist.

We do not hold that the applicant is in fact disabled. She is college educated and certainly intellectually capable of a variety of sedentary clerical work, and many of those jobs don't require lifting or aggravate respiratory problems. Indeed, it's not even clear that she is incapable of doing her past relevant work. The term refers to the type of job, not to idiosyncratic duties that the employer may have imposed. 20 C.F.R. § 404.1560(b)(2); *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). Emptying coffee urns doesn't sound like a typical duty of a night-clerk auditor, but the administrative law judge did not discuss the meaning of "past relevant work" and so far as appears found that the applicant can do her past work as a night-clerk auditor, coffee-urn duties and all—a finding not supported by his analysis or by the record, or even by his opinion, in which he says that she can lift up to 10 pounds.

Really the Social Security Administration and the Justice Department should have been able to do better than they did in this case.

The judgment of the district court is reversed with directions to remand the case to the Social Security Administration for further proceedings consistent with this opinion.