NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 29, 2013
Decided May 3, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-3085

| | |
|---|---|
| RONDA HAMILTON,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    *Defendant-Appellee*. | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 11 C 6471<br><br>Arlander Keys,<br>*Magistrate Judge*. |

**O R D E R**

Ronda Hamilton was in a car accident in 2005 and sustained back and shoulder injuries. These injuries, she says, cause pain that prevents her from working full time. She sought disability insurance benefits under Title II of the Social Security Act, but an ALJ denied her claim, finding that she is actually capable of full-time sedentary work and that she exaggerated her limitations when she testified. After the Appeals Council declined to review this decision, Hamilton sued in federal district court, which entered summary judgment for the Commissioner. Because the ALJ did not support her findings with

substantial evidence, we vacate the district court's judgment and remand for further proceedings consistent with this order.

Back pain is Hamilton's chief complaint, and the length of time that she can tolerate sitting is the primary issue in this case. If she can sit for intervals of only about 20 minutes, as she claims, Hamilton is disabled. But if, as the ALJ found, she can sit for at least 45-minute stretches, there are a significant number of sedentary jobs she can perform, and she is not disabled.

Hamilton's back pain started in 2005 when she was in a car accident and sustained a compression fracture to her first lumbar vertebra, a torn rotator cuff, and pelvic injuries. Her fractured vertebra touches her spinal cord, and she has spinal stenosis (narrowing) and lesions in her sacral canal. Her treatment has included physical therapy, prescription pain medications, spinal injections, surgery to repair her left rotator cuff, and medication to minimize her "bladder spasms." One of Hamilton's treating physicians, pain specialist Dr. Sheila Dugan, estimates that Hamilton can sit "in a stiff chair" for only 20 to 30 minutes. Dr. Dugan adds that although Hamilton can handle "about two hours" of sitting on a "soft surface," the total sitting time that she can endure in a workday is under 6 hours. Another treating physician, neurologist Dr. Martin Luken, opined in 2007 that Hamilton suffers from "complex pain syndrome" and is "completely disabled from the standpoint of gainful employment." Dr. Luken also signed a report that was completed by a physical therapist, Renee Spanberg, in 2009 after she gave Hamilton a "physical performance test." Ms. Spanberg reported that Hamilton's "maximum sitting tolerance was 20 continuous minutes."

At Hamilton's first hearing before an ALJ, she testified that her injuries have drastically limited her daily activities. The amount of time that she can sit "depends on what kind of chair I'm in . . . if I'm sitting in a straight back chair it's about 15 to 20 minutes, if I'm in a lazy boy or something that really supports my back I can sit for maybe an hour, hour and a half." She testified to taking Lyrica for pain. She also acknowledged that on one occasion, some months before the hearing, she drove from northern Illinois to Kentucky, stopping to rest from driving only every couple of hours.

After this hearing, the ALJ denied Hamilton's application for benefits, finding that she was not fully credible. Hamilton had not, the ALJ wrote, sought medical treatment for years, which led him to surmise that her pain could not be as severe as she had described. The Appeals Council, however, noticed that the ALJ's adverse credibility finding was premised on a mistake—he had ignored Hamilton's continued receipt of physical

therapy—and remanded the case to a different ALJ for reconsideration and further evidence development.

At the second hearing the following year, Hamilton again described her sitting tolerance as "20 minutes, and that's pushing it," and she detailed her activities: She does some household chores but must perform them slowly and take frequent breaks; she needs to lie down in bed four or five times a day after activity; she attends church weekly, but she must stand at the back when she reaches her maximum sitting time. At the time of this hearing, she was taking the prescription medications Flexeril (for pain relief) and over-the-counter ibuprofen. She had earlier been prescribed Lyrica, Darvocet, and Oxycontin, but she explained that her doctors discontinued these pain medications after she complained that they left her drowsy and disoriented.

Following Hamilton's testimony, a medical expert, Dr. Sheldon Slodki, testified that Hamilton's condition limits her to "sedentary" employment. When Hamilton's attorney questioned him about the report of Ms. Spanberg, the physical therapist, in which she said that Hamilton could tolerate only 20 minutes of sitting, Dr. Slodki observed that the report's conclusion was consistent with Hamilton's testimony. (He did not otherwise question or endorse it.)

A vocational expert testified last. The ALJ asked her whether there are a significant number of jobs for people who are confined to sedentary, unskilled work and cannot sit for more than 30 minutes, and the expert replied that there are not, adding "generally I like to see 45 minutes." The ALJ then asked whether there are jobs for those who can tolerate sitting for at least 45 minutes. The expert answered that there are, and she reiterated that there are not a significant number of sedentary jobs for people who can sit fewer than 45 minutes.

The ALJ concluded that Hamilton was not disabled and issued a decision once again denying her benefits. In the ALJ's assessment, Hamilton has retained the ability to sit comfortably in a standard chair for 45 to 60 minutes, which (as the vocational expert testified) would allow her to work jobs that exist in significant numbers. In reaching this conclusion, the ALJ followed the standard five-step disability analysis. She found at steps one and two that Hamilton has not engaged in substantial gainful activity since her accident and that she has two severe, medically determinable impairments: low back pain secondary to a vertebral fracture and a left rotator cuff injury. At step three, the ALJ found that neither of these impairments is listed in 20 CFR 404.1520(d), meaning that the analysis must proceed to step four.

Before moving to step four, the ALJ assessed Hamilton's residual functional capacity (RFC) to be sedentary and made the determination at the heart of this appeal: "The claimant requires a sit/stand option allowing her to sit or stand alternatively at will every 45 to 60 minutes." After finding that Hamilton could sit for at least 45 minutes, the ALJ discussed Hamilton's credibility. She began with this familiar piece of boilerplate:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

The ALJ then characterized Hamilton's hearing testimony as internally inconsistent and inconsistent with other evidence. She wrote that Hamilton had testified at the first hearing that she can sit for an hour and at the second hearing that she can sit for only 20 minutes. But the ALJ omitted Hamilton's testimony from the first hearing where she said that in a standard chair she can sit for only 15 to 20 minutes. The also ALJ wrote that Hamilton's "activities of daily living"—household chores, watching television, visiting friends, using a computer, going to church once a week, and once driving to Kentucky with breaks only every couple of hours—are inconsistent with her asserted limitations, but she did not explain how. Finally, although Hamilton testified at the first hearing that she was taking the prescription medication Lyrica for her pain, the ALJ wrote that Hamilton testified at that hearing to taking no prescription pain medications.

The ALJ also explained how much weight she gave to the medical opinions in the record, characterizing the opinions of Hamilton's treating physicians, Dr. Luken and Dr. Dugen, as "generally consistent" with the objective medical evidence and thus entitled to "appropriate weight." To the opinion of the medical expert, Dr. Slodki, she gave "great weight," describing it as "generally consistent with the evidence of record and the opinions of Dr. Luken, Dr. Dugen, and Ms. Spanberg." But the ALJ gave "no weight" to the 2007 letter where Dr. Luken opined that Hamilton is "disabled"; that determination, the ALJ explained, is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(2). She also patly dismissed the finding of Ms. Spanberg, the physical therapist, that Hamilton can sit for no more than 20 minutes: "Based on my review of the evidence, as discussed above, I find that the record does not support a finding that the claimant requires a sit/stand option more frequently than every 45 to 60 minutes."

After determining Hamilton's RFC to be sedentary work with an option to stand every 45 minutes, the ALJ completed step 4 by explaining that Hamilton is unable to return to her previous work as a nurse's aid because it was not sedentary work. At the fifth and final step, the ALJ concluded that Hamilton is not disabled because sedentary jobs that accommodate her limitations exist in the national economy in significant numbers.

This time around the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. Hamilton filed suit in the district court, but the court granted summary judgment to the Commissioner after concluding that substantial evidence supports the ALJ's decision. The court acknowledged that the ALJ's decision is flawed and at places even "misleading," but it did not think these problems called for remand.

On appeal, Hamilton challenges the ALJ's finding that she can regularly sit for 45 to 60 uninterrupted minutes. According to Hamilton, the record shows that 20 minutes is generally her limit. She contends that the ALJ should have found her disabled given the vocational expert's testimony that an insignificant number of jobs accommodate this limitation.

In particular, Hamilton first argues that the adverse credibility finding was improper because the ALJ misrepresented her testimony as inconsistent. An ALJ's credibility determination is entitled to great deference, but it must be justified with specific reasons and have support in the record. *See* SSR 96-7p; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Steele v. Barnhart*, 290 F.3d 936, 941–42 (7th Cir. 2002). The ALJ wrote that Hamilton testified at the first hearing to being able to "sit for 15 minutes to one hour" but at the second hearing to being "capable of sitting for 20 minutes."

Testimonial inconsistencies can indeed form the basis of an adverse credibility finding, *see* SSR 96-7p, but Hamilton convincingly argues that she did not contradict herself. Her testimony at the first hearing was that the amount of time she can sit depends on the chair: She can tolerate a "straight back" chair for about 20 minutes but a "lazy boy" recliner for up to an hour and a half. She did not testify, as the ALJ represented, that she could sit in any chair for up to an hour. Hamilton's testimony at the first hearing thus is consistent with her testimony at the second hearing, where she said that she can sit for "20 minutes, and that's pushing it," unless she is in her recliner. We also note that the ALJ made another misrepresentation about Hamilton's testimony when she wrote that Hamilton denied taking prescription pain medication at her first hearing. Hamilton actually testified that she was taking Lyrica for pain.

   The ALJ's mistakes about Hamilton's testimony are problematic on their own, but they are compounded by the ALJ's resort to the boilerplate passage about credibility that we quoted earlier. In that passage, the ALJ deems Hamilton's asserted limitations not credible "to the extent" they are inconsistent with the RFC findings. As we have stressed repeatedly, the passage implies that the ALJ may permissibly settle on an RFC *before* assessing the claimant's credibility when in fact credibility must be assessed first. *Shauger*, 675 F.3d at 696; *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012).

   The Commissioner responds that ALJs who employ this objectionable boilerplate can salvage their credibility findings by providing sufficient additional analysis of the claimant's credibility. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). We conclude, however, that the rest of the ALJ's credibility analysis, fails to efface the impression given by the boilerplate. One problem is found in the ALJ's primary justification for not fully crediting Hamilton: "The claimant has described activities of daily living which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." This view of Hamilton's daily activities improperly and inexplicably ignores her testimony that completing activities takes her much longer since the accident and that she must spend half an hour lying in bed four to five times a day. We have admonished ALJs to appreciate that, unlike full-time work, the "activities of daily living" can be flexibly scheduled, *Bjornson*, 671 F.3d at 647, and we have criticized "the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment," *Hughes v. Astrue*, No. 12-1873, 2013 WL 163477 at *3 (7th Cir. Jan. 16, 2013). We have also recognized that a person who needs to spend much of the day lying down cannot work. *See Roddy v. Astrue*, No. 12-1682, 2013 WL 197924 at *8 (7th Cir. Jan. 18, 2013); *Bjornson*, 671 F.3d at 646, 648. What is more, the activities the ALJ characterizes as inconsistent with Hamilton's limitations do not necessarily involve sitting for longer than 20 minutes. (The single exception is Hamilton's one-time drive to Kentucky, where she managed to drive for two-hour stretches before taking breaks, but the record contains no evidence of the length of her breaks or whether she needed to lie down during them, and the ALJ did not explain how this isolated recreational event means that Hamilton can do the same thing on a full-time basis. Simply mentioning the drive as the ALJ did is insufficient; as this circuit puts it, the ALJ must build a "logical bridge" between the evidence and her conclusions. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).)

   Turning to the medical testimony, Hamilton next argues that the ALJ, in assessing her RFC, should have given her treating physicians' opinions controlling weight but did not. A treating physician's opinion is entitled to controlling weight unless it is not supported by the physician's records or is inconsistent with the reports of other

sources. 20 C.F.R. § 404.1527(d)(2); *Scott*, 647 F.3d at 739. An ALJ who concludes that such an opinion is not entitled to controlling weight must give good reasons for that conclusion. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).

We agree with Hamilton that the ALJ did not properly evaluate the medical opinions in this case. The most obvious problem is that the ALJ said she was giving the doctors' opinions "appropriate weight" without specifying how much weight is appropriate. But even if we put that issue aside, the ALJ's analysis falls short because she erroneously called the opinions of Hamilton's doctors and her physical therapist "generally consistent" with an RFC limited to sedentary work with the option to stand every 45 minutes. The ALJ's announced RFC conflicts with the medical opinions of Hamilton's medical providers on the pivotal question of how long Hamilton can sit in a standard chair. Dr. Dugan's opinion was that Hamilton can sit in a firm chair for no more than 20 to 30 minutes, and the physical therapist, Ms. Spanberg, in a report signed on to by Dr. Luken, opined that Hamilton has a maximum sitting time of 20 minutes. The vocational expert testified that a person must be able to sit for at least 45 minutes—presumably in whatever kind of chair the employer chooses to provide—in order to hold a full-time, sedentary job. Therefore, the physicians' opinions that she can sit at most for only 30-minute intervals cannot be glossed over as "generally consistent" with a conclusion that she can work full time. (Although Dr. Dugan agreed that Hamilton can sit for up to two hours in a "soft" chair, nothing in the record suggests that something equivalent to Hamilton's "lazy boy" recliner, which she uses for sittings that exceed 20 minutes, is typically available in the work settings that the vocational expert considered.)

Another problem with calling the physicians' opinions "generally consistent" with the RFC finding is that Dr. Luken opined that Hamilton is "disabled." This opinion, too, conflicts with the RFC finding that she can keep working. While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, *see* 20 C.F.R. § 416.927(e)(2), a treating physician's opinion that a claimant is disabled "must not be disregarded," SSR 96-5p; *see also Roddy v. Astrue*, No. 12-1682, slip op. at 10–11, 13–14 (7th Cir. Jan. 18, 2013) (explaining that ALJ must address treating physician's opinion that claimant cannot "handle a full-time job"). Here, the ALJ's description of Dr. Luken's opinion as "generally consistent" with her RFC determination disregards his opinion that Hamilton is disabled.

Finally, the ALJ also inadequately justified rejecting the conclusion of the physical therapist, Ms. Spanberg, that Hamilton can sit for only 20 minutes. Even if Ms. Spanberg's report cannot be attributed to Dr. Luken (who signed it but did not write it) and thus cannot be given the controlling weight of a treating physician's opinion, a physical therapist's

report is entitled to consideration and cannot be arbitrarily rejected. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004). The ALJ gave no explanation for rejecting Ms. Spanberg's opinion other than to say that "the record does not support [her] finding . . . ." This is an empty explanation, and it is in tension with the testimony of Dr. Slodki, the medical expert, who repeated Ms. Spanberg's opinion that Hamilton can sit for only 20 minutes without suggesting that he disagreed or that the opinion was unsupported by the medical record. Last, although Dr. Slodki assessed Hamilton's RFC to be "sedentary" (an opinion to which the ALJ gave "great weight"), this means that Hamilton can work only while seated; it is not an opinion about how long she can sit.

Thus neither the medical nor non-medical evidence in the record supports the ALJ's conclusion that Hamilton exaggerated her limitations and that she actually can sit regularly for 45-minute stretches. In fact the *only* reference to "45 minutes" in the record is from the vocational expert who informed the ALJ that jobs are not available for people who cannot sit for at least that long. Because the ALJ's key findings were not supported by substantial evidence, we **VACATE** the judgment of the district court and **REMAND** this case to the agency for proceedings consistent with this opinion. In those proceedings, the agency shall award benefits unless it determines that additional findings and conclusions still need to be made.