**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2016
Decided August 9, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1299

| | |
|---|---|
| HENRIETTA DOWLEN,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:15-cv-00377-TAB-JMS<br><br>Tim A. Baker,<br>*Magistrate Judge.* |

**O R D E R**

Henrietta Dowlen, a 65-year-old who suffers from pain primarily in her arm and neck, appeals the district court's judgment upholding the denial of her application for disability insurance benefits. An administrative law judge found that, despite her impairments, she retained the residual functional capacity to perform her past relevant jobs, first as a mail sorter and then as an insurance claims clerk. Dowlen challenges both the adequacy of the ALJ's RFC finding and the ALJ's conclusion that she could perform her past relevant work. Because substantial evidence supports the ALJ's decision, we affirm.

In 2012 Dowlen applied for disability insurance benefits, claiming that injuries in both arms and a bulging disk in her neck rendered her unable to work. Years earlier, in 1996, she had been in a car accident and underwent surgery on her right arm. In February 2012, she reinjured that arm (and wrist) and had to compensate by using her left arm more, which, she complained, caused left arm and neck pain.

Around this time, Dowlen was diagnosed with a right-arm and hand strain. She saw Dr. Andrew Combs, a hand specialist, who diagnosed a right-arm strain and tingling and noted her complaints of pain and weakness with gripping. Dowlen completed occupational therapy in March 2012, and reported pain but she had normal range of motion in her right arm and improved grip strength in both hands. In late-March, Dowlen saw Dr. Andrew Vicar, an orthopedic specialist, who noted right wrist pain and tenderness, and opined that Dowlen could work so long as she did not have to use her right wrist to lift more than two to four pounds. In April, Dr. Vicar noted that she was "doing a lot better" and opined that she could return to full duty work with no restrictions. That same month, however, she lost her job as a claims clerk "due to downsizing."

In May Dr. Vicar opined that Dowlen's right wrist had reached "maximum medical improvement" and that she could return to work. He added that she had "0 percent permanent partial impairment of the hand below the elbow," but she still complained of arm soreness, so he referred her to the physiatry department. One week later Dowlen saw physician's assistant Tom Spindler, who found that she had tenderness in the neck area, though a test for nerve root compression was negative. An MRI showed moderate vertebrae degenerative disc changes with bone spur growths and thinning of the membrane that surrounds the spinal cord. Dr. Shane J. Rose, the interpreting physician, believed that the most significant finding was narrowing on disc levels with possible nerve-root impingement. Dowlen returned the next week complaining of neck and left-arm pain, and Spindler, the physician's assistant, diagnosed a pinched nerve and referred Dowlen for an epidural injection.

At a consultative examination in August, Dr. Sanjiv Anand noted that Dowlen complained of difficulty holding and gripping objects, but she had normal muscle strength, grip strength, and fine finger skills. Dr. Anand also noted Dowlen's complaints of pain in her arms and neck caused by a pinched nerve and right-arm fracture and sprain.

The Disability Determination Bureau denied her claim in September 2012 based on an August 2012 review from state-agency physician, Dr. A. Dobson. Dr. Dobson determined that Dowlen had two severe physical impairments—a right-arm fracture and pain caused by weakening spinal discs—but opined that she could perform her past relevant work as it was generally performed in the national economy. After Dowlen requested reconsideration, Dr. M. Ruiz affirmed Dr. Dobson's opinion and the Disability Determination Bureau again denied Dowlen's claim.

In November 2012 Dowlen experienced numbness in her left arm and hand, and went to the St. Vincent Hospital emergency department, where she was diagnosed with cervical nerve impingement and muscle strain. Notes in her records reflect that Dowlen by this time had lost her medical insurance and was unable to obtain regular care.

In June 2013 Dowlen went to the Wishard Health Services emergency department with complaints of pain and weakness in the left arm and shoulder. A medical student, under a doctor's supervision, diagnosed a pinched nerve in her neck and also bicep muscle loss.

Three months later, Dowlen was seen by a neurosurgeon, who noted that she had full strength throughout the right upper arm and intact biceps. He diagnosed nerve-related, left-arm pain and weakness and recommended that she receive an MRI of the neck and an electromyogram (EMG) of her left arm. Dowlen did not produce the EMG results but the examining doctor noted evidence of a mild chronic pinched nerve.

At a video hearing before an administrative law judge in December 2013, Dowlen testified that she had a lot of pain and numbness in both her hands and her left shoulder. She reported that she lived alone, but had difficulty performing certain tasks such as opening a water bottle, brushing teeth, and combing hair. She explained that she took out the trash and shopped for groceries herself, but was helped with heavy things by her grandchildren, who she watched daily. Dowlen also testified that her past work in "mail and distribution" was fast-paced and required lifting and sorting bundles of claims, while her past work as a "Medicare secondary payer" involved a lot of typing. She could not perform either job anymore, she testified, because she couldn't open letters fast enough or type on a keyboard all day; she was looking, however, for slower paced and less hand-intensive work.

At the hearing, the ALJ asked a vocational expert a series of hypothetical questions for an individual of Dowlen's age, education, and work experience. The ALJ

asked the VE to assume an individual who was restricted to light work, could never climb ladders or similar devices, but frequently could perform handling, fingering, and reaching. Noting that such a person could not perform the mail-sorter position as Dowlen testified she performed it, which would be considered medium work, the VE concluded that such a person could perform both of Dowlen's past relevant jobs—claims clerk and mail sorter—as they were generally performed in the national economy. If that person were restricted to sedentary work, however, the VE concluded that the individual could perform only Dowlen's past claims-clerk job. The VE reported that the claims-clerk position generally required using a computer for "at least three-quarters of the day." And the VE testified that a mail sorter generally was not considered fast-paced but every job had a quota and "if a person can't keep up with the quota that is set for them . . . I don't see how they can keep up with competitive work."

The ALJ applied the five-step analysis in 20 C.F.R. § 404.1520(a)(4), and found Dowlen not disabled. The ALJ determined that she had not engaged in substantial gainful activity since the alleged onset date of February 7, 2012[1] (step one); that her left arm and hand pain, her right arm sprain, and her chronic neck pain with pinched and inflamed nerves were severe impairments (step two); that these impairments did not equal a listed impairment (step three); that she had the RFC to perform light work, with the limitations of no more than frequent use of her hands for handling, fingering, and reaching, and never climbing ladders and similar devices; and that she could perform both her past relevant jobs as a claims clerk and mail sorter (step four).

In determining Dowlen's RFC, the ALJ found her testimony about the severity of her impairments "not entirely credible" in light of several factors. With little elaboration, the ALJ mentioned that Dowlen left work because of downsizing, not disability; and he added that she must have felt capable of working to some degree because she sought unemployment benefits and confirmed that she was looking for work. He noted that she told the consultative physician that she could lift 15 to 20 pounds, and the physical examination findings actually showed "normal function of the hands and arm." Moreover, Dowlen was self-sufficient, living alone, and even was able to care for her grandchildren.

A magistrate judge, presiding by consent, *see* 28 U.S.C. § 636(c), affirmed the ALJ's decision. In the magistrate judge's view, Dowlen's case "hinge[d] primarily on

---

[1] This date appears to be in error, as Dowlen amended her alleged onset date to the date she was laid off, April 13, 2012.

whether the ALJ's credibility finding was patently wrong" and he concluded that it was not. Despite her impairments, the magistrate judge pointed out—and Dowlen' counsel acknowledged as much—that the record contained no medical opinion from a treating or examining source indicating that she was more limited that the ALJ found. The magistrate judge agreed with Dowlen that the ALJ's step-four analysis was cursory, but nonetheless his findings were "reasonable" because he had expressly mentioned her past relevant work, referred to the Dictionary of Occupational Titles with respect to both her jobs, and heard testimony from the VE about her ability to perform them.

On appeal Dowlen argues that substantial evidence does not support the ALJ's finding that she could use her hands for handling, fingering, and reaching frequently on the job. Dowlen contends, for instance, that the ALJ overlooked a doctor's impression of an August 2013 EMG that there was evidence of a compressed nerve, as well as findings on an emergency room notation that Dowlen had experienced bicep muscle loss. This evidence, she urges, suggests a greater degree of limitations than the ALJ credited.

But these two pieces of evidence are not as revealing as Dowlen supposes, and the ALJ needn't be faulted for not discussing them explicitly. Significantly, neither shows that Dowlen had greater limitations than the ALJ assessed in his RFC finding, and as such he was not required to address them. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The August 2013 EMG did show that Dowlen had a mild chronic compressed nerve, but the ALJ in fact found this condition to be a severe impairment. Indeed he addressed this condition in detail when reviewing earlier MRI results and diagnoses of the condition, and even added manipulative limitations to Dowlen's RFC—no climbing of ladders and only frequent handling, fingering, and reaching—in part based on these reports and diagnoses. As for the emergency-room notation from 2013, the ALJ did not address it, but its reference to bicep muscle loss does not suggest greater restrictions than that set by the ALJ in his RFC finding.

Dowlen next argues that the ALJ's credibility determination discounting the extent of her subjective symptoms—the severity of her pain and her inability to perform fast-paced work—was patently wrong because it 1) relied generally on her testimony of her daily activities, which does not contradict her allegations of severe pain or her inability to perform fast-paced work, 2) inaccurately assessed her testimony about her discharge and search for a new job, and 3) overemphasized the significance of her receipt of unemployment benefits.

Dowlen's argument on the first two points is well taken. In the credibility assessment, the ALJ did not explain how Dowlen's daily activities undermine the credibility of her complaints, and such a conclusion is not self-evident. *Compare Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (criticizing ALJs for placing undue weight on a claimant's daily activities); *with Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (concluding ALJ can consider description of daily activities in assessing whether testimony about the effects of his impairments was credible or exaggerated). The ALJ also read too much into Dowlen's testimony when he stated that she left her job for reasons unrelated to her impairment and that she confirmed she was looking for work in the same field.

But with regard to her third complaint—concerning the ALJ's consideration of her receipt of unemployment benefits—we are not persuaded. Although a claimant can still be found disabled while collecting unemployment benefits or looking for work, *see Voigt v. Colvin*, 781 F.3d 871, 876–77 (7th Cir. 2015), an ALJ may take this factor into account in assessing the subjective complaints of disability, *see Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). Dowlen never tried to explain how she could be able to take on new work if her pain was as severe as she said or provide alternative reasons for her collecting unemployment.

We conclude that the ALJ's adverse credibility finding was not patently wrong, particularly in the absence of any medical opinion from a treating or examining source stating that Dowlen's symptoms were more severe than the ALJ acknowledged. The ALJ looked to physical examination findings and Dowlen's medical history and found nothing to support her assertions regarding her inability to work at the job's required pace. The ALJ also pointed to a physical examination from August 2012 where Dowlen had normal grip strength and was able to pick up a coin and button a shirt. Because the ALJ's credibility determination overall was reasoned and supported, and not patently wrong, *see Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008), any errors that the ALJ made do not warrant reversal.

Dowlen also argues that the ALJ underestimated the "manipulative demands" of both her past jobs when he found at step 4 that she was capable of performing them. With regard to her past work as a mail sorter, Dowlen argues that this job requires a fast pace that she cannot handle, and that the ALJ ignored her testimony about this. She adds that the ALJ did not account for the manipulative demands of the mail-sorter job with enough specificity.

We agree with the magistrate judge that the ALJ's step 4 analysis was cursory but did not rise to the level of reversible error. Even though Dowlen testified that her mail-sorter job required a pace faster than she could keep up with, the ALJ in his credibility assessment found this testimony unsubstantiated by the record. Further, Dowlen focuses on the wrong target when she addresses her testimony about her own mail-sorter job rather than the tasks of the job as generally performed in the national economy, which is the proper analysis. *See* SSR 82-61, 1982 WL 31387, at *2 (1982); *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013); *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). She offered nothing to refute the testimony of the VE, in his response on cross-examination, that the job is routine and not considered fast-pace, and that it could be performed by someone with Dowlen's RFC. Given the VE's testimony, the ALJ was entitled to find that an individual with her RFC could work as a mail sorter as it is generally performed, if not as she specifically performed it.

Finally Dowlen argues that the ALJ failed to evaluate whether she could perform the manipulative demands of a claims clerk. Dowlen points out that the ALJ found that she could use her hands for fingering frequently, and the Social Security Administration defines frequent as *up to* two-thirds of the time. *See* SSR 83-10, 1983 WL 31251, at *6 (1983). On cross-examination, however, the VE testified that a claims clerk would generally be required to use a computer *at least* three-quarters of the day. The ALJ erred, says Dowlen, by not addressing the VE's testimony or otherwise explaining how someone who could finger for only up to one-third of the day, could use the computer at least three-quarters of the day.

The ALJ did not address this contradiction, and the record does not support the ALJ's conclusion that Dowlen could perform this job with her RFC. But this error is harmless because the ALJ properly found that Dowlen could work as a mail sorter, and she needs to be able to perform only one of her past relevant jobs in order to be considered not disabled. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

In sum, the ALJ's decision is supported by substantial evidence. We affirm the district court's judgment upholding the ALJ's denial of disability benefits.