┌─────────────────────────────────────────────┐
│ **NONPRECEDENTIAL DISPOSITION**              │
│ To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 25, 2018
Decided July 6, 2018

**Before**

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2239

| | |
|---|---|
| DELLA M. COOLEY, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
|     *v.* | |
| | No. 16 C 0016 |
| NANCY A. BERRYHILL, | |
| Acting Commissioner of Social Security, | Sidney I. Schenkier, |
|     *Defendant-Appellee*. | *Magistrate Judge*. |

**O R D E R**

Della Cooley, now 55, applied for Disability Insurance Benefits based on a litany of ailments—sleep apnea, fibromyalgia, carpal tunnel syndrome, and high blood pressure. But an administrative law judge concluded that these impairments were not disabling. Cooley contends on appeal that the ALJ erred by not properly assessing the impact of her daytime somnolence on her ability to work, and by ignoring evidence of her need to frequently alternate between sitting and standing. We affirm.

Cooley says that she was fired from her customer-service job in 2007 after taking time off for pain in her back, neck, and hand. She tried to work again in 2010, but resigned six weeks later because of issues with concentration, sleepiness, and pain. The Social Security Administration concluded that this was an "unsuccessful work attempt"—in effect, evidence that she could not maintain that job because of her medical condition. In 2011 Cooley applied for disability benefits based on her various ailments, alleging an onset date of October 2008.

Cooley sought treatment from primary-care doctor Sanjay Pethkar over intermittent years (2006–08 and 2011–14). Dr. Pethkar diagnosed Cooley at various times with sleep apnea, high blood pressure, carpal tunnel syndrome, fibromyalgia, radiculopathy, and chronic-fatigue syndrome. He diagnosed Cooley with sleep-related issues but did not elaborate. For instance, in the "Reason for Visit" section of a 2014 treatment form, he simply wrote, "OSA cannot work." In connection with Cooley's application for benefits, Dr. Pethkar completed a questionnaire about her functional capacity and opined that she "occasionally" (defined on the form as 1–33 percent of the time) could sit, stand, and walk.

Dr. Kimberly Middleton, a family-medicine doctor, examined Cooley at the state agency's request. She noted that Cooley experienced "mild tenderness" at several fibromyalgia trigger points, but did not indicate any issues regarding Cooley's strength, gait, or balance. Dr. Middleton concluded that Cooley's symptoms were consistent with both fibromyalgia and carpal tunnel syndrome. She also wrote that Cooley had a history of "morning sluggishness" and "daytime hypersomnolence." She added that Cooley's reports of sleep apnea seemed credible, but that she could not corroborate Cooley's complaints without conducting a sleep study.

The next month, a state-agency physician specializing in family medicine, Dr. Richard Bilinsky, reviewed Cooley's medical records and remarked that her complaints seemed "somewhat excessive" compared to the objective medical evidence. He opined that Cooley could stand, walk, and sit for about six hours per eight-hour period.

Also in May 2011, Jeff Floyd, a physician assistant from Dr. Pethkar's practice, opined that Cooley could sit for only fifteen to twenty minutes before needing to stand, could stand for ten to fifteen minutes before needing to change positions, and needed unscheduled breaks during a workday. Floyd also noted that Cooley could not sit or stand for more than two hours in an eight-hour workday and that Cooley had symptoms of sleep apnea, fatigue, and excessive sleepiness.

At a hearing before an administrative law judge in May 2012, Cooley testified about her limitations. She explained that she tried working again in 2010, but quit after six weeks because she had trouble concentrating, felt light-headed, and had pain in her back and neck. She also said that she could not concentrate well enough to pass required tests during training, and had issues falling asleep at work. Her daily activities included driving short distances, spending time with her grandchildren, grocery shopping, cooking, and cleaning, though she said she could not stand for more than 30–40 minutes at a time.

The ALJ found Cooley not disabled, but the Appeals Council vacated this decision because the ALJ failed to evaluate properly Cooley's fibromyalgia, her treating physician's opinion, and the effect that her increase in age—she since had turned 50—had on her claim.

At a second hearing in 2014, Cooley testified again about her need to alternate frequently between sitting and standing. She stated that she could sit comfortably only for fifteen to twenty minutes at a time, and could stand at most for only thirty minutes. She also testified that she struggled to sleep at night, despite using a Continuous Positive Airway Pressure (CPAP) machine, and that she occasionally would "nod off" while talking to people at work.

Also at the hearing, testimony about Cooley's impairments between 2008 and 2012 was presented by medical expert Dr. Sai Nimmagadda. Dr. Nimmagadda noted that there were no objective records corroborating Cooley's complaints of sleep issues, as the record consisted almost entirely of transcriptions of Cooley's own subjective complaints.

A vocational expert then testified that Cooley, based on the residual functional capacity described by the ALJ (i.e., being able occasionally to lift and carry twenty pounds, frequently ten; able to sit, stand, and walk for six hours of an eight-hour day), could perform her past customer-service work. The vocational expert added that someone limited to occasional sitting, standing, and walking would be able to perform a light range of work. But someone whose sitting and standing limitations required her to be off-task for more than fifteen percent of the day, the VE said, would be unable to sustain work.

The ALJ then denied benefits using the 5-step framework, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ determined that Cooley had not engaged in substantial gainful activity since her alleged onset in October 2008 (Step 1); she suffered from several severe impairments—sleep apnea, fibromyalgia/ chronic fatigue syndrome, carpal tunnel syndrome, headaches, and chronic pain syndrome (Step 2); and these impairments, individually or in combination, did not satisfy a listing for presumptive disability (Step 3). In assessing Cooley's residual functional capacity, the ALJ found that her impairments reasonably could be expected to produce her alleged symptoms, but her testimony concerning the limiting effects of these symptoms was "not entirely consistent with the overall record" because she engaged in a "fair level" of daily activities and her complaints were not corroborated by medical evidence. The ALJ concluded that Cooley had the residual functional capacity to perform her past relevant work as a customer-service representative (Step 4). Alternatively, the ALJ concluded that Cooley could perform a number of other jobs, including rental clerk, counter clerk, and hostess (Step 5).

The agency's Appeals Council denied review, making the ALJ's decision final. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). On judicial review, a magistrate judge presiding by consent, *see* 28 U.S.C. § 636(c), upheld the denial of benefits.

Cooley first argues that the ALJ did not sufficiently consider the effect of her daytime somnolence on her residual functional capacity. In particular, she says that the ALJ overlooked (1) Dr. Pethkar's opinion that she could not work because of her sleep apnea, (2) Dr. Middleton's reference to Cooley's "sluggishness" and "hypersomnolence," (3) the physician assistant's statement that Cooley's sleep issues would require her to take breaks at unpredictable times, and (4) Cooley's testimony that her somnolence issues caused her failed work attempt in 2010.

The ALJ properly assessed the three medical opinions. She appropriately justified discounting Dr. Pethkar's statements about Cooley's sleep issues because they were conclusory and not supported by any clinical basis. An ALJ may discount a doctor's statements that are not adequately explained if the treatment notes do not clarify the doctor's reasoning. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). And Dr. Pethkar's notes did not substantiate his opinion regarding Cooley's sleep issues. Similarly, the notes that Dr. Middleton and Floyd (the physician assistant) took of Cooley's fatigue appear simply to recite her own subjective complaints. The ALJ was thus not required to rely on these statements.

In support of her argument that her somnolence issues render her disabled, Cooley points to the Social Security Administration's determination that her return to work in 2010 was an "unsuccessful work attempt"—an acknowledgment, in effect, that she could not maintain her job because of her medical condition, *see* SSR 84-25, 1984 WL 49799, at *2. Given this evidence, Cooley challenges the ALJ's finding at step four that she could return to her past customer-service job.

But Cooley misapprehends the nature of the ALJ's inquiry into disability. That a claimant's medical condition prevents her from performing one specific job does not automatically qualify her as disabled. An employee who may not be able to perform excessive functional demands of a particular job required by one employer could still potentially perform "the functional demands and job duties as generally required by employers throughout the economy." *See* SSR 82-61, 1982 WL 31387, at *2; *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013); *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). For example, Cooley testified that she could not perform her former customer-service job, in part because she could not concentrate well enough to pass certain tests during training. But the definition of "customer-complaint clerk" in the Dictionary of Occupational Titles does not mention this type of training requirement, meaning that Cooley may not face the same tests if she undertakes training for this same type of job with a different employer. *See* DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES § 241.367-014 (4th ed. rev. 1991), *available at* www.//www/oalj.dol.gov/ PUBLIC/DOT/REFERENCES/DOT02B.HTM.

In any event, any error on the ALJ's part in determining that Cooley could perform her past work was harmless. The ALJ went on to find at step five that Cooley could have worked in a significant number of other jobs (such as "rental clerk," "counter clerk," and "hostess," and so he reached the same not-disabled determination this alternate analysis. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (explaining that any error surrounding ALJ's determination that claimant could perform light work was harmless when substantial evidence supported conclusion that claimant could perform sedentary work).

Next, Cooley argues that the ALJ failed to consider her need to alternate between sitting and standing when determining her residual functional capacity. Most significantly, Cooley says that the ALJ ignored (1) Dr. Pethkar's opinion, (2) the physician assistant's opinion, and (3) Cooley's own testimony.

The ALJ adequately considered the opinions of both Dr. Pethkar and his assistant Floyd towards Cooley's sitting and standing limitations. We begin with Floyd, whose opinion is more straightforward. The ALJ appropriately rejected Floyd's unsubstantiated opinion—in which he stated that Cooley's limitations were more extreme than did any doctor of record. Because Floyd offered no explanation for his opinion, the ALJ was entitled to discount it. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). As for Dr. Pethkar, it is true that the ALJ did not explicitly mention his comment that Cooley could sit and stand only "occasionally," but this does not mean she did not consider it as part of her overall review of the doctor's notes. And even if the ALJ had overlooked this opinion, this error was harmless. The vocational expert confirmed that someone limited to "occasional" sitting and standing, consistent with the limitations Dr. Pethkar opined, could still perform a range of light work if he or she remained on task for eighty-five percent of the day. And we will not remand a case when we are convinced the ALJ would have reached the same result despite evidence of a claimant's greater limitation. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Finally, we conclude that the ALJ adequately justified her decision to discredit Cooley's account of her symptoms. We afford an ALJ's credibility determination special deference, and will reverse only if the claimant can demonstrate that the determination was "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The ALJ acceptably justified her finding that Cooley's activities with daily living were not consistent with her descriptions of her ailments. In doing so, the ALJ properly considered the qualifications Cooley put on these activities, noting that Cooley completed household chores with "recurrent breaks." *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). Further, the ALJ was permitted to compare Cooley's 2012 testimony regarding these activities, including her comment that she could stand 30–40 minutes while cooking and doing dishes, with her later statements that her ability to sit and stand was more limited. We look only to whether the ALJ's credibility determination was patently wrong, and Cooley's inconsistent testimony demonstrates that it was not. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("We cannot…substitute our judgment for the ALJ's when considering the weight of the evidence, and [the plaintiff] must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong.")

A final note: The ALJ erred in finding that Cooley's symptoms were not supported by the medical record, when Cooley did in fact testify about pain. Testimony about pain cannot be disregarded simply because it was not corroborated by objective evidence. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). True, the *consistency* of her

complaints with the medical record may be considered as probative of her credibility, *Jones*, 623 F.3d at 1161, but the ALJ did not explain how the medical record contradicted Cooley's statements. While the ALJ noted that physical examinations reflect that Cooley had normal gait, muscle strength, and neurological testing, she does not explain why such findings were inconsistent with Cooley's account of her limitations. Ultimately, however, any errors concerning the inconsistency of Cooley's complaints with the medical record do not undermine the evidence that does support the credibility determination. Thus, we cannot say the ALJ's decision was patently wrong.

AFFIRMED